## In re HARMON.

### (District Court, S. D. West Virginia. November 21, 1903.)

1. BANKRUPTCY—CLAIMS—WORKMEN—PRIORITY—ASSIGNMENT—EFFECT.

Under Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 [U. S Comp. St. 1901, p. 3447], providing that wages due to workmen, clerks, or servants which had been earned within three months before the commencement of bankruptcy proceedings, not to exceed $300, to each "claimant," shall be given priority, the fact that a large number of laborers holding claims for labor performed for the bankrupt assigned such claims to two of their number, who were also laborers, and who held claims of their own, in order to save costs in prosecuting suits against the bankrupt to recover such wages, the assignees agreeing to account to their assignors for the amounts due each when collected, did not deprive the claims so assigned of their right to priority.

Certificate of the Referee to the United States District Judge for Review.

The bankrupt, C. P. Harmon, was engaged in business in Raleigh county, W. Va., as a railroad subcontractor, employing numerous workmen. The petition in involuntary bankruptcy was filed against said Harmon by certain creditors on the 29th day of July, 1903. About a week prior to the filing of said petition said bankrupt abandoned his work and disappeared from Raleigh county, largely indebted, and without having paid his laborers and workmen since June 1, 1903. A large number of said workmen immediately instituted suits with attachments against the goods, stock, etc., of bankrupt, in justices' courts of said county. The oral proof taken before the referee shows that at the time of the institution of said suits, and in order to save costs in a number of actions, some 14 of the white laborers assigned the amounts due them, respectively, to one Ed Sisley, a laborer, and a number of the negro laborers assigned the amounts due to them, respectively, to one James Tucker, a laborer, for purposes of obtaining judgments and execution in their names, instead of by separate suits; the said Tucker and Sisley agreeing to account to said laborers for the said amounts due them, respectively, when collected. The amounts ran from $3.35 to $46.05, and the total number of accounts so assigned amounted to some 35. The aggregate amount assigned said Tucker, including his own claim for labor, amounted to $298.50, and the total amount assigned to Sisley, including his own claim for labor, amounted to $290.78.

At the time of the institution of the actions the attorney for the laborers advised this assignment as a method of saving cost and expense, and as still being within the jurisdiction of the justice, namely, $300; and the oral testimony shows that it was made in that manner, for that purpose, and to that extent only, the assignees being virtually trustees for the assigning laborers

---

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 536.

to the extent of their several proportions of the recovery. On the 23d day of July, 1903, such assignments were drawn up by the laborers' attorneys and executed by said laborers to said Sisley and Tucker. The written assignments are attached to and made a part of this record, marked, "Tucker Assignment," and "Sisley Assignment." On the 28th day of July, 1903, said claims were duly proven before the justice, and judgments rendered in favor of said Sisley and Tucker against C. P. Harmon for said respective amounts. On the 29th day of July the petition in bankruptcy was filed.

After the breaking up of Harmon's work, the various laborers sought other work, in mines and on railroad building, and at the time of the first creditors' meeting they were scattered, and their whereabouts were unknown and unascertainable by their attorneys; and accordingly their attorneys, as such, made proof of said Sisley and Tucker claims as priority labor claims, earned within four months of the filing of the petition, as attorney or agent, under Form No. 36, filing with said proofs certified abstracts of the judgments. On motion to expunge oral evidence of two foremen of said Harmon, and of H. C. Ellett, the attorney for said laborers, who was present at the trial, and heard the testimony upon which the judgments were rendered, satisfied the referee that said claims were proper and correct as to amount, and that they were earned by the laborers and said Sisley and Tucker within the four months period, and that the character of the work was such that said wages were properly priority claims.

Counsel for petitioning and general creditors, however, assert that, even if this be so, said claims having been assigned prior to the filing of the petition were not at the time of said filing "due to workmen, clerks or servants," within the meaning of the act, section 64b, subd. 4, Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], and hence should not be allowed as prior claims, and cite Re Weslund (Dist. of Minn.) 3 Am. Bankr. Rep. 646, 99 Fed. 399, in support of their contention. This decision (of District Judge Lochren) is directly in point, and holds that assignment before the institution of the bankruptcy destroys the priority to which such debts are entitled, because in such case, at the date of the filing, the debt is not longer "due to workmen," etc.; but the decision merely announces this to be the law, cites no authority, and practically no discussion. The decision not being a binding precedent upon this court, and the referee being unable to concur in the reason or the reasoning of the opinion, he declined to follow it; holding that the assignment does not affect the status or character of the claims made priority claims by the act, and that such status depends upon the nature of the claim, and not upon who proves it in the bankruptcy proceedings. To hold otherwise would, in my judgment, deprive the protected class of the most valuable incident of the protection afforded their earnings, namely, their assignability, as the class of earnings protected are peculiarly such class that the earners thereof are most frequently obliged to realize upon before paid, and can only do so by assigning the same. In my view, they should be given the full protection to their claims, and enabled to realize on them at such time as their necessities demand, with the knowledge in their assignees that they are acquiring protected claims, which will be secure and paid before general creditors. Nor can I see how such a rule can work to the disadvantage of general creditors, as, had the claims not been assigned, the laborers who had earned them could, of course, prove their full amount ahead of the general creditors. This their assignees have done, and no more. Unless the statute, in plain words, and not by forced construction, demands it, I would think it proper that the ordinary effect of the common law relative to assignments should apply here as elsewhere, and the assignee stand in exactly the same position as to a claim assigned as the assignor, which would here give him a position in a class preferred which his assignor possessed.

In the case at bar there exists the additional reasons for allowing the priority: First, that the assignment is proven to have been intended as and actually creating the assignees, Tucker and Sisley, virtually, merely trustees for the laborers; and, second, if the strict letter of the act is resorted to in support of the claim that the wages are no longer "due" to workmen, clerks, or servants, the facts show that both Sisley and Tucker were workmen of Harmon, but did not themselves earn the whole of the claims proven, as the strict

letter of the act does not require such wages to have been earned by the work-men proving them, but only that they shall have been earned within the required period.

Entertaining this view, the referee directed payment by the trustee of said claims as priority claims, and, counsel for petitioning creditors desiring a review of the referee's decision, I hereby certify the facts and my decision, with such portion of the record as is material, for review.

All of which is respectfully submitted.          W. G. Mathews,
                              Referee in Bankruptcy, S. D. West Virginia.
Charleston, W. Va., November 3, 1903.

Kerr & Kerr and John H. Hatcher, for lien creditors.

Brown, Jackson & Knight, H. M. Anderson, George Kay, and John W. McCreery, for petitioning creditors.

KELLER, District Judge. Upon consideration by the court, the foregoing ruling of the referee is approved in full. I am of opinion that the bankruptcy act was intended by Congress to prefer claims for labor performed within three months prior to the filing of the petition, regardless of the fact that they may have been assigned. And I think this is indicated by the use of the word "claimant," instead of "workman," in section 64, Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447].