### J. P. BROWDER & CO. v. HILL.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1905.)

#### No. 1,371.

1. SUBROGATION—VOLUNTARY PAYMENT OF ANOTHER'S DEBT.

The mere fact that one pays off a debt at the instance of the debtor, or lends money with which to pay it, does not entitle him to subrogation to a lien of the creditor; nor is it enough that there is an understanding on his part and that of the debtor that the right of subrogation will result from such payment, in the absence of an express agreement therefor.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Subrogation, §§ 60–68.]

2. SAME—AGREEMENT WITH DEBTOR—EQUITIES OF THIRD PERSONS.

Subrogation by agreement with the debtor alone, to the equities and liens of a creditor whose debt is paid off by one under no obligation, will be enforced in equity only when the agreement creates equitable rights against the debtor, which will not impair or overthrow equitable rights of the creditor or of innocent third persons.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Subrogation, §§ 60–68.]

3. SAME.

A third person who pays a portion of a debt secured by a lien, at the instance of the debtor, will not be subrogated in equity to such lien, to the prejudice of the original creditor with respect to the remainder of his debt.

4. BANKRUPTCY—SUBROGATION TO LABORER'S LIEN OR PREFERENCE.

A bankrupt corporation gave to its employés orders on claimants for goods, and charged the same against the current wages of the men. Claimants filled such orders, and charged the amount to the corporation, which paid the same from time to time, either in cash, or by note or credits on its books. Under the statute (Acts Tenn. 1897, p. 222, c. 78) the employés were entitled to laborers' liens on the property of the corporation for wages earned within three months prior to the bankruptcy. *Held,* that no right of subrogation to such liens arose in favor of claimants from such transactions, nor to the priority given labor claims by

the bankruptcy act, and that such subrogation would not be accorded them where it appeared that, if it were, the estate would not be sufficient to pay the preferred claims in full.

Appeal from the District Court of the United States for the Eastern District of Tennessee.

Robert Pritchard and J. B. Sizer, for appellants.
Wm. L. Frierson (Lewis Shepherd, of counsel), for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. The appellants constitute a partnership which was engaged in selling groceries and other merchandise at Chattanooga. The appellee is the trustee in bankruptcy of a corporation engaged in making iron at the same place. Appellants supplied goods to workmen in the employment of the furnace company upon orders of the company, and for the amount of such orders supplied within three months prior to adjudication in bankruptcy, remaining unpaid, filed a claim in their own name, and asserted a laborer's lien upon the property of said bankrupt under a Tennessee statute giving a lien to workmen employed by such corporations. The claim was allowed as an unsecured claim. Because the lien claimed was disallowed, the creditor has appealed.

The evidence shows that from time to time the furnace company gave to its workmen, on account of current wages, orders upon the appellants for goods and merchandise. These orders were charged up against the men receiving them, and at the end of each month appellants would present the orders received and paid during the month, and receive a credit for the total amount on the books of the company, less 5 per cent. deducted from the face of the orders by an arrangement between the parties. Upon some occasions only partial payments were made, and notes given for the balance, and for the two months immediately preceding bankruptcy no payments at all were made to appellants on account of such orders. The aggregate of appellants' claim is $2,265.85, of which $750 is represented by a promissory note for that amount. The workmen themselves received such orders as payments, and neither made any assignment of them, nor of their claim for wages, nor agreed to any substitution of appellants to any lien in their favor as laborers. Such orders rarely, if ever, equaled the amount due to the receiver as wages, and only from 40 to 60 per cent. of their monthly wages were paid in such orders. For the rest they received or expected to receive money upon the next pay day. It is inferable that the workmen who accepted such orders for part of their wages are themselves claiming, for the balance due them, priority out of the bankrupt estate, either as lienors under the Tennessee labor lien statute, or under the priority accorded by the bankrupt law.

The stipulated facts include a statement that, "if the priority claimed by Browder & Co. is allowed, the assets [of the bankrupt

estate] will not be sufficient to pay labor claims in full, after paying expenses of administration."

By the Tennessee act of 1897, p. 222, c. 78, a lien is given in behalf of the employés and laborers of any corporation doing business within the state, upon corporate property, "for any sums due them for their labor and service." By the second section of this act it is provided, that the lien so created "shall only extend to and protect such claims as may have accrued within three months of the beginning of any suit for the enforcement thereof, and shall continue during the pendency of any suit brought for its enforcement." Assuming that this Tennessee statute creates a specific lien, and not a mere right of priority in distribution, the question we have to decide is whether the lien which once existed in behalf of the respective laborers survives in behalf of appellants under the circumstances of this case. Appellants do not claim in their petition or assignment of error or briefs that there has been any assignment of the labor claims pro tanto by consent or knowledge of the laborers themselves. In the absence of evidence that the owners of such lien claims intended to sell, and agreed that the lien should be kept alive for the benefit of the purchaser, payment, and not an assignment, will be presumed. Venner v. F. L. & T. Co., 90 Fed. 349, 33 C. C. A. 95. There is therefore no foundation for any claim that appellants are assignees of the claims or lien in behalf of labor claims under any agreement, express or implied, with the creditors themselves. What they do claim is that there existed an express agreement with the debtor, the furnace company, that such claims, when paid off by them, "should stand against the furnace company in the same attitude as if held by the original wage earners."

The mere fact that one pays off a debt at the instance of the debtor, or lends money to pay off such debt, does not entitle him to subrogation to the liens of the creditors so paid off. McDonald, Shea & Co. v. Railroad, 93 Tenn. 281, 24 S. W. 252; Wood v. Guarantee Trust Co., 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 472; Morgan's, etc., v. Texas Cent. R. Co., 137 U. S. 172, 11 Sup. Ct. 61, 34 L. Ed. 625; Rheeling's Appeal, 107 Pa. 161; Sheldon on Subrogation, § 243; Unger v. Leiter, 32 Ohio St. 210; Griffin v. Proctor's Adm'r, 14 Bush (Ky.) 571; Venner v. F. L. & T. Co., cited above.

Conventional subrogation may result from a direct agreement between a debtor and a third person who pays the debt that he shall be subrogated to all the rights and securities existing in behalf of the creditor whose debt is paid off. But nothing short of an express agreement to that effect will move a court of equity in behalf of such a creditor. A mere understanding upon the part of such a third person, under no obligation to pay the debt, that he by such payment will be subrogated to the liens of the creditor, is not enough. Sheldon on Subrogation, §§ 243, 248, 250; 27 Amer. & Eng. Ency. of Law, 257; Receivers of N. J. Ry. Co. v. Wortendyke, 27 N. J. Eq. 658, overruling Coe v. N. J. Ry. Co., 27 N. J Eq. 111; Unger v. Leiter, 32 Ohio St. 210; Brice v. Watkins, 30 La. Ann.

21; Hutchinson v. Rice, 105 La. Ann. 474, 29 South. 898; Cumberland B. & L. Ass'n v. Sparks, 111 Fed. 648, 49 C. C. A. 510.

Subrogation, by agreement with the debtor alone, to the equities and liens of a creditor whose debt is paid off by one under no obligation, is an equitable doctrine, which comes from the civil law, and is enforced only when the agreement creates equitable rights against the debtor, which will not impair or overthrow equitable rights of the creditor or of innocent third persons. When, therefore, subrogation depends wholly upon an agreement with the debtor, the rights of the creditor to the remainder of his debt must not be prejudiced. Sheldon on Subrogation, § 248, and sections 70 and 127; 27 Am. & Eng. Ency. (2d Ed.) p. 257; Bissett v. Grantham, 67 Mo. App. 23, 26; Stuckman v. Roose, 147 Ind. 402, 46 N. E. 680; Smith v. Morrison (Tex. Civ. App.) 29 S. W. 1116; Fievel v. Zuber, 67 Tex. 279, 3 S. W. 273.

The evidence of a direct agreement between Browder & Co. and the furnace company that the lien in behalf of laborers should be kept alive, and appellant substituted thereto, is not so clear and satisfactory as to justify a reversal of the finding against such an agreement by the referee and district judge. That both parties supposed that Browder & Co. would stand precisely in the shoes of the laborers who received orders on them for goods, simply because the orders were given as credits upon current wages, is not enough. It may have been of some convenience to the workmen to receive such orders in advance of one of the regular pay days, but it was a convenience for which they doubtless more than paid, for it appears that, if they insisted upon money instead of goods, a discount of from 15 to 25 per cent. was exacted. Neither was the scheme without profit to the debtor, for the arrangement was that the furnace company should give credit for these orders on Browder & Co. only to the extent of 95 per cent. of their face value. So, too, if it did not suit the convenience of the furnace company to pay these orders when the wages of the men became due, an ordinary promissory note was given in settlement, or a mere credit was given upon the books for the aggregate of the orders presented. All of these circumstances tend to indicate that the ordinary relation of debtor and creditor existed, and that the parties acted upon the erroneous idea that, because the orders given were in partial payment of wages, the debt thus created would stand in the shoes of the debt paid off. Neither would we be justified in reversing the order denying subrogation when it is evident that subrogation will prejudice the rights of the very laborers whose claims were only partially paid by the goods supplied them upon the employer's order. The distinct stipulation is that the assets of the bankrupt, after paying expenses, will not pay labor claims proper in full, if this substitution is allowed. Being a pure equity, subrogation by agreement with the debtor alone will not be accorded if it impair the security of the creditor for the remainder of his debt, or prejudice innocent third parties having equities of equal rank.

Affirm the order.