### In re FULLER & BENNETT.

(District Court, S. D. West Virginia.   March 5, 1907.)

1. BANKRUPTCY—PREFERENCES—WAGES OF EMPLOYÉS—ASSIGNMENT.

One to whom wage claims of employés of bankrupt are assigned before commencement of the bankruptcy proceedings is, in respect thereto, entitled to the benefit of Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448], giving preference to workmen, clerks, and servants for wages earned within three months before commencement of the bankruptcy proceedings.

2. SAME—NOVATION.

Where one to whom wage claims of employés of bankrupts are assigned exchanges them with the bankrupts for their note and duebill, there is a novation of the wage claims, extinguishing the preference given by Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448], to claims for wages.

In Bankruptcy.

Payne & Payne, for Charleston Hardware Co.
C. W. Dillon, for W. B. Blake.

DAYTON, District Judge (sitting specially).   This cause comes before me upon the petition of the Charleston Hardware Company to review the action of the referee in allowing a claim of W. B. Blake to have preference as an alleged "labor" one.   The facts are substantially as follows:   Blake filed before the referee his proof of claim for $1,325.23, and the referee ascertained $1,296.25 to have priority over other debts as a "labor" one.   This $1,296.25 consisted of a note executed by the bankrupt firm to Blake, May 23, 1906, for $700, a duebill executed by the firm, June 5, 1906, to Blake for $357.95, and some 23 other duebills and "labor scrip checks" issued by the bankrupt firm to various laborers in their employ for wages, and by them assigned to said Blake.   It is substantially agreed that said note for $700 and the duebill for $357.95 were executed to Blake for these "labor scrip checks" issued by the firm to its workmen and purchased by him before the institution of the bankruptcy proceeding.   These "checks" were substantially cards, marked "not transferable," issued to these laborers for wages, and declaring on their face that they were good for specified amounts at the commissary of Fuller & Bennett.   The petitioner, a creditor of said bankrupt firm, insists that the referee erred in allowing preference to Blake for the amount of these notes and assigned duebills and labor checks.   The referee based his action upon the ruling in Re Harmon (D. C.) 128 Fed. 170, a decision by Keller, J., of this district, dated November 21, 1903, confirming the finding of this same referee, wherein it was held under the bankrupt act (Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448]), giving preference to workmen, clerks, and servants for wages earned within three months before commencement of bankruptcy proceedings, not to exceed $300 to each claimant, the fact that a large number of laborers holding claims for labor performed for the bankrupt assigned such claims to two of their number, who were also laborers, and who held claims of their own, in order to save

costs in prosecuting suits against the bankrupt to recover such wages, the assignees agreeing to account to their assignors for the amounts due each when collected, did not deprive the claims so assigned of their right to priority.

As to the broad proposition of whether an assignee, before bankruptcy proceeding commenced, of a labor claim, is entitled to the preference provided his assignor as such laborer, decided conflict of authority has arisen. Under a similar provision of the act of 1867, Act March 2, 1867, c. 176, 14 Stat. 517, in Re Harthorn, Fed. Cas. No. 6,162, a father was held entitled to preference for wages due his minor son.

In Re Erie Rolling Mill Company (D. C.) 1 Fed. 585, the company had issued orders to its employés for wages, in form following:

"No. 573.                              "Erie, Pa., October 12, 1875.

"Pay to Mr. J. Heffner, or bearer, five dollars in goods and charge to ·'$5.00 ,                                        Erie Rolling Co."

These orders had been taken by merchants from such laborers, and preference was claimed, but it was held they were not entitled thereto.

In Re Brown, Fed. Cas. No. 1,974, a claim for a balance of laborers' wages in the hands of one who had advanced a part before bankruptcy of the employer, and who had taken an assignment of such claims as security, with the understanding that he was to collect the whole amount and repay himself, was held to have preference.

Under our act of 1898 (section 64b) in Re Westlund (D. C.) 99 Fed. 399, it is expressly held that an assignee, under assignment made before bankruptcy proceeding commenced, of such labor claim, is not entitled to priority. The language of Lochren, J., in this last case very clearly presents one view of the question. He says:

"No right to priority arises or exists until the proceeding in bankruptcy is instituted, and then the wages assigned are not 'due to workmen, clerks or servants,' but to their assignees, and are outside the language of this clause."

In Re Campbell (D. C.) 102 Fed. 686, the laborers' claims were assigned after commencement of bankruptcy proceeding, and the case on this ground is distinguished from In re Westlund, supra, and the priority allowed.

In Re North Carolina Car Co. (D. C.) 127 Fed. 178, Purnell, J., one of the judges of this circuit, in discussing this question, says:

"To give a claim priority under this section, it must be due the wage-earner. Should such wage-earner prove his claim and establish his priority, he could then assign the claim, and the assignee would be subrogated to this priority. But if assigned before being thus proved, the assignee would acquire no more right to priority than the assignee of any other unsecured debt."

The only Circuit Court of Appeals case I have found that touches the question is that of Browder & Co. v. Hill, 69 C. C. A. 499, 136 Fed. 821 (Sixth Circuit), where it was held:

"A bankrupt corporation gave to its employés orders on claimants for goods, and charged the same against the current wages of the men. Claimants filled such orders and charged the amount to the corporation, which paid the same from time to time, either in cash, or by note or credits on its books. Under the statute (of Tennessee) the employés were entitled to laborers' liens on the property of the corporation for wages earned within three months prior

to the bankruptcy. Held, that no right of subrogation to such liens arose in favor of claimants from such transactions, nor to the priority given labor claims by the bankruptcy act, and that such subrogation would not be accorded them where it appeared that, if it were, the estate would not be sufficient to pay the preferred claims in full."

It is to be noted, however, in this case, that the orders were given directly to claimants, as merchants, by the bankrupt, in favor of the laborers, and the finding is that they constituted not assignment, but payment, of their wages; therefore it is not in point here, except so far as its general result may tend to refute the position, taken in Re Harmon, that the status of a claim "depends upon the nature of the claim, and not upon who proves it in the bankruptcy proceeding."

Thus it will be seen that two judges of this circuit, Judges Keller and Purnell, have decided this question directly opposite to each other, and that a decided conflict upon the question exists among the outside authorities. Under such circumstances, it becomes decidedly embarrassing for me to determine the matter, and in doing so I earnestly suggest that final appeal be made to the Circuit Court of Appeals of this circuit, so that we may have an authoritative ruling in regard to it.

That section 64b of the bankrupt act was designed to protect the wage-earner, dependent for his living upon his daily wage, cannot be questioned. That it gave a preferential lien for the wages earned three months prior to bankruptcy proceeding, without requiring notice, by recordation or otherwise, of such lien, is also true. Common experience tells us that laboringmen, owing to their financial exigencies, constantly find it necessary in some way to forestall the securing the benefit of their wages prior to the time fixed for them to become due and payable by their employers. Thus, nothing is more common than for them to secure a certificate of some kind or form, showing that they have earned or are entitled to a sum for such wages, which they can assign to another and thereby secure money or supplies necessary for their immediate needs. To say that a person cannot take an assignment of such wages without losing the lien which the laborer by law clearly has, would in very many cases militate against the interests of the laborer and not in his favor. It would in many cases cause him to sell such demands at ruinous discounts. Certainly this was exactly the opposite of the humane purpose of the statute. To say that he may, after proving his claim for wages in the bankruptcy proceeding, which necessarily causes delay, assign it and preserve the lien to the assignor, but cannot do so before such proof in bankruptcy or before bankruptcy proceeding commenced against his employer, seems to me to be a narrow and technical construction, nor warranted. Suppose his claim be wholly undisputed and admitted; what possible reason is there why he should be required to either starve or suffer, awaiting the law's delays, before realizing, by assignment, upon it? Both before and after proof in bankruptcy, it is the claim for the same labor performed, and supported by the same equities, and in either case he has derived the same relief from the assignment. It therefore seems to me that one who takes by assignment from a wage-earner such claim, who has in this way aided and relieved the wage-earner in realizing without delay the means required by his necessities, ought not to be in a sense discrimi-

nated against and punished for so doing. Therefore it seems to me that the assignee of such labor claim who presents it as such, in its original form and subject to its original equities, should be held to take by such assignment all the rights of the assignor, including the right to preference given by this section 64b.

But this, it seems to me, should always be subject to this important condition and limitation: That, after having so acquired by assignment, he must not novate the debt nor merge it with other debts, or take from the debtor new obligations and securities therefor wholly due and payable to himself. It is not to be forgotten that the liens of this kind are not recorded, and the outside creditors can obtain no notice of them in that way. When presented in their original form, either by the wage-earner or by his assignee, it is easy enough for other creditors to ascertain whether the claim is just and comes within the limits of the statute; but on the other hand, suppose one takes by assignment from say 50 or 100 different laborers their several claims and merges them together and secures from the employer a new obligation for the total amounts, made to himself, does he not novate the debt? Is it not clear that he intends by such act to release the several wage-earners of all right to recourse upon them in case he does not collect? Does he not clearly, by such act, deprive such wage-earners of the common-law and statutory right of assignors to require him to sue and collect? Does he not thereby substitute a new and single contract for the many old ones, wholly under his own control? Does he not extinguish the numerous old obligations? Does he not, in short, by such act, clearly show his purpose to be to take the employer as his personal debtor and hold him alone responsible? I think so.

A novation is the substitution of a new obligation for an old one, which is thereby extinguished. The requisites of a novation are a valid prior obligation to be displaced, consent of all parties to the substitution, a sufficient consideration, the extinction of the old obligation, and the creation of a valid new one. The substitution may be in the debt or contract, in the debtor or in the creditor. 4 Current Law, 838. Under the law, when Blake took from Fuller & Bennett the note for $700, was not a complete novation consummated under this definition? In the first place, not only was there a substitution of a new obligation for an old one, which was thereby extinguished, but stronger still, a single new obligation was substituted for many old ones, the number of which and with whom made we do not know, and it is doubtful if it could be ascertained. It was with the consent of parties, it was based upon sufficient consideration, it substituted a new creditor, Blake, for many old ones in the persons of the wage-earners, and it extinguished the old obligations, which are not attempted to be relied on, and, so far as the record discloses, may not be in existence. In Clough v. Giles, 64 N. H. 73, 5 Atl. 835, it has been expressly held that when the acceptor of an assignment of future wages informs the assignee, after the wages are earned and due, that he will pay them to him, the assignment is completed, and there is a novation of parties and debt. The case here is much stronger. Fuller & Bennett not only accepted the assignment of these wage claims after due and verbally promised to pay, but actually executed their written obligation therefor to the assignee person-

ally. In Morriss v. Harvey, 75 Va. 726, it is held, where the transaction amounts to a novation of the debt by a mere exchange of securities, the new contract, accepted in satisfaction of the old, becomes an accord executed, and discharges the original cause of action, whether the new contract is ever performed or not.

Many additional authorities could be cited and the discussion extended, but I have made clear, I think, the grounds upon which I hold in this case:

First. That for the 23 duebills and "labor scrip checks" presented and proved, in their original forms, by Blake, as assignee of the several wage-workers to whom they were executed and issued by the bankrupt firm, Fuller & Bennett, he is entitled, as assignee, to the preference provided for in section 64b of the bankruptcy act, and Referee Mathews did not err in so holding.

Second. That the execution of the note for $700 and the duebill for $357.95 by Fuller & Bennett to said Blake for numerous labor scrip checks and duebills issued to wage-workers in the employ of said firm, and assigned to said Blake, operated as a complete novation of the original contracts to said wage-workers, and such novation entirely extinguished the preference held by the original claims under said section 64b, and that therefore said Referee Mathews erred in holding said $700 note and said $357.95 duebill as having such preference, instead of being simply unsecured debts.