JULIA J. HOLLAND *et al. vs.* CITIZENS' SAVINGS BANK *et als.*

A mortgagee cannot be compelled to assign his mortgage unless the person claiming such assignment is a surety who has paid the mortgage debt, or one personally bound to pay the debt by reason of some similar relation, or one who has special equities by reason of the mortgagee's contract or conduct.

When two or more persons are interested in mortgaged property, of whom one, to protect himself, pays the mortgage debt, he is subrogated, in equity, to the mortgage lien as against the others, so far as he can claim indemnity from them.

After a mortgage has been given, a stranger to it, acquiring an interest in the mortgaged property, gets no equity against the mortgagee at variance with the latter's rights, so long as the latter does nothing to create such equity.

When a mortgagee acts within the letter of his power of sale, courts will not willingly interfere with the exercise of the power on an allegation that the power is perverting to purposes other than the payment of the debt. To justify interference the perversion must be clear and clearly charged.

When a mortgage sale is oppressive, a purchaser's *bonâ fide* grantee, without notice and for value, still obtains a good title.

BILL IN EQUITY for an account, to compel the transfer of mortgages, and for an injunction. On demurrer to the bill.

*March* 1, 1890. DURFEE, C. J. The bill shows that John K. Lester, late of Providence, died January 20, A. D. 1880, leaving a will by which he devised the larger part of his homestead estate, subject to certain conditions, to his son, John Erastus Lester; that said homestead estate, when said John K. died, was subject to two mortgages for $3,000 each, given to the Mechanics' Savings Bank, one dated September 10, A. D. 1875, and the other March 2, A. D. 1876; that said bank transferred them, August 18, A. D. 1884, to the Citizens' Savings Bank; that September 29, A. D. 1888, said Citizens' Saving Bank advertised said homestead estate for sale on October 20, A. D. 1888, under the powers in said mortgages; and that previous thereto said John Erastus Lester had conveyed his interest in said estate to the complainant, Julia J. Holland. This bill was filed October 17, A. D. 1888. It set forth that said Julia had offered to pay said Citizens' Savings Bank the amount due on the mortgages and expenses, provided the bank would assign the mortgages to her, or to some person named by her, but that the bank had refused to do so. The bill repeated the offer, and prayed that the bank might be compelled to accede to it, and also that the sale might be enjoined. The complainants prayed for a prelimi-

nary injunction, which the court denied. The bill also showed that John K. Lester died leaving other real estate, likewise mortgaged, and two other sons, to one of whom, James C. Lester by name, he devised, subject to certain conditions, besides other real estate, that portion of the homestead estate which he did not devise to John Erastus, so that the two $3,000 mortgages covered the estate devised to said John Erastus, and overlapped upon that which was devised to said James C. Lester. The bill as originally filed set forth certain complications which it alleged had arisen in the settlement of the estate, affecting the rights of said John Erastus, and the said Julia as his grantee, making it difficult for her to pay off the mortgages, and at the same time important for her to have them assigned to her. The bill has been amended, and as amended sets forth that the homestead estate was sold, at mortgagee's sale, October 20, A. D. 1888, to one Orrin E. Jones, and afterward conveyed by him to one Roswell O. Whitney. Jones and Whitney have been made parties to the bill as amended. The bill now asks that the sales may be cancelled, and that said Julia may have said mortgages transferred to her on paying the amount due thereon, or that she may be allowed to redeem. The bank has demurred to the bill generally for want of equity, and the bill is before us on said demurrer. The amended bill sets forth reasons for relief not set forth in the original bill; but it alleges nothing to show that the sale, as such, was improperly conducted. The purchaser therefore acquired a good legal title to the estate, and communicated it to his grantee, and the grantee, as legal owner, is entitled to hold the estate unless the complainant Julia can show some equity which gives her a right as against him to the relief prayed for. But she can have no equity against him unless he and his grantor had notice thereof when they purchased. The amended bill simply avers in regard to Jones, the purchaser at the mortgage sale, that he had notice of the pendency of this bill, which means, of course, the bill before it was amended, the amendments having been made since the sale. The averment in regard to Whitney, the present owner, is that he purchased with notice of the complainant's rights. The averment is very general; Story's Eq. Plead. § 263; but, whatever notice Whitney may have had, he would take the estate subject only to the equi-

ties which it was subject to in the hands of his grantor, who, as we have seen, is simply alleged to have had notice of the pendency of the bill as originally filed. The question, then, supposing such notice sufficient, is, whether the bill as originally filed discloses equities entitling said Julia to the relief now prayed for.     ,

We will first consider whether the bill as originally filed showed that the said Julia had any right to have the mortgages assigned to her upon paying to the holder the amount due thereon, together with the expenses incurred by the holder in advertising, etc. The rule which is the more generally recognized is, that a mortgagee cannot be required to assign the mortgage upon receiving the amount due thereon, unless the person making payment is entitled to such assignment for some equitable reason, but can only be required to release or discharge the debt and mortgage, or, if the person making payment prefers, to surrender them to him uncancelled. This is because the mortgagee, like any other creditor, is not under any obligation to sell and transfer his claim to another, but is only under obligation to accept payment thereof when duly tendered, and because he is entitled under the mortgage, if the debt is not paid as stipulated, to sell the estate for its payment, or to foreclose in some other mode, as provided by law. *Chedel* v. *Millard,* 13 R. I. 461 ; *Butler* v. *Taylor,* 5 Gray, 455 ; *Lamson* v. *Drake,* 105 Mass. 564 ; *Lamb* v. *Montague,* 112 Mass. 352 ; *Hamilton* v. *Dobbs & Robinson,* 19 N. J. Eq. 227 ; *Bigelow* v. *Cassedy,* 26 N. J. Eq. 557 ; *Gatewood* v. *Gatewood,* 75 Va. 407 ; *Chase* v. *Williams,* 74 Mo. 429 ; *Ellsworth* v. *Lockwood,* 42 N.Y. 89. The question, then, is, what is such a reason as will give a right to the assignment, and does any such apply in favor of said Julia? The cases hold that a surety paying the debt is entitled to have the mortgage assigned to him, and it has been said that the equity would likewise reach to any one else personally bound to pay the debt by reason of a similar relation to it. *Gatewood* v. *Gatewood, supra.* And so, doubtless, the mortgagee might become subject to the equity by reason of his own contract or conduct. Further than this we do not find that the cases, except in New York, admit the equity ; their doctrine being that, where two or more persons are interested in mortgaged property, subject to the mortgage, and one of them pays the mortgage debt for his own

protection, he is entitled, not to have the mortgage assigned to him, but simply to succeed to the lien of the mortgage against the others in equity, to the extent of his claim against them for indemnity, by way of subrogation.    This seems to us to be the correct doctrine.   ·The right of the mortgagee originates in the mortgage, and we do not see how on principle, after the mortgage has been given, any other person, by acquiring an interest in the mortgaged property, can acquire an equity against him at variance with his right, so long as he himself does nothing to create it.   2 Jones on Mortgages, §§ 1086, 1087.

The bill as originally filed shows only two grounds on which the complainant Julia could claim to have the mortgages assigned to her : namely, *first,* because the mortgages cover other property than her own ; and, *second,* because certain complications set forth in the bill have arisen in the settlement of the mortgagor's estate. But said divided ownership and said complications are both matters arising after the mortgages were given, and matters with which, so far as appeared by said bill, neither the original mortgagee nor its assignee, the Citizens' Savings Bank, had had anything to do.   The bill as originally filed, therefore, did not show any equitable ground on which said Julia was entitled to have the mortgages assigned to her.

The said Julia contends that she is entitled, if not to have the mortgages assigned to her, to redeem them notwithstanding the sale.   She admits that, when she filed her bill and when the sale occurred, she had not paid or tendered payment of the mortgage notes, then overdue, but her claim is that no tender was necessary, because the bank, then holding the mortgages, prevented her making tender by informing her that payment of the two $3,000 mortgages would not be received unless she also paid a mortgage for $8,000 given to the bank by James C. Lester aforenamed, after his father's death, upon the portion of the estate devised to him by his father's will, and therefore covering a part of the homestead estate covered by said two mortgages.   If this was so, the effect was, in our opinion, not to defeat the power of sale, but only to make the sale under it oppressive and inequitable on the part of the bank, and a *bonâ fide* purchaser for value without notice would still get a good title.   For the purchaser to be affected he

must have had notice.  *Jenkins* v. *Jones*, 2 Giff. 99 ; *Montague* v.
*Dawes*, 12 Allen, 397 ; *Cranston* v. *Crane*, 97 Mass. 459.    The
question is, therefore, whether the bill as originally filed gave such
notice, notice in no other form being alleged.   We do not find
that it did.   It made no mention of the mortgage for $8,000, the
same being first set forth in one of the amendments.   It did not
allege any previous tender or even offer of payment, simply as
such, but only an offer to pay the amount due on the mortgages
for an assignment of them.    It is not clear that the bill itself of-
fered payment unconditionally, though it contained a formal
prayer to redeem.   Of course, the mere pendency of a bill to
redeem would not suspend the power, for that would defeat the
purpose of the power, which is to avoid the delay of a suit.
*Adams* v. *Scott*, 7 W. R. 213 ; 2 Jones on Mortgages, § 1797.
We do not think the said Julia is entitled to redeem, as against
the present owner, for the second ground assigned.

The said Julia claims a right to redeem on another ground,
namely, a perversion of mortgage power to purposes for which it
was not given.   The power is given to the mortgagee for the pur-
pose of enabling him to collect his debt more readily than he
could by suit, and if, instead of using it for that purpose, he at-
tempts to use it from a bad motive, to oppress the debtor, or to
acquire the property himself, or to serve the purposes of others,
the court considers it a fraud upon the power and may enjoin the
sale, or, if the sale has been made, may set it aside in a proper
case.    2 Jones on Mortgages, § 1801, *Robertson* v. *Norris*, 1 Giff.
421 ; *Foster* v. *Hughes*, 51 How. Pr. 20.    But it is a delicate
matter for the court to interfere on this ground when the mort-
gagee is acting within the letter of his power, and, to warrant it,
the perversion should be very clearly and specifically alleged.
2 Jones on Mortgages, § 1804 ; *Vaughan* v. *Marable*, 64 Ala. 60.
Of course it does not follow, because some advantage may accrue
to the mortgagee from the sale, besides the payment of the debt,
or because advantage may incidentally accrue to others, that the
power is perverted, and the mortgagee cannot be required to
forego the exercise of it simply for that reason.    2 Jones on Mort-
gages, § 1802.

The bill as originally filed set forth that John K. Lester, when

he died, was indebted to his son, John Erastus, in about $21,000 ;
that James C. became executor of the will, and that as such, and
as devisee under it, he procured from John Erastus a release of
said John's claims against the estate in consideration of an agree-
ment on his part to pay to said John certain sums of money, and
to deliver to said John the portion of the estate devised to him,
at the time appointed by the will for delivery, freed from the
mortgages ; that said James paid said money in part, but died be-
fore carrying out the rest of said agreement ; that Warren R.
Perce, one of the defendants, who succeeded him in the adminis-
tration, has refused to complete carrying it out, and that said
Julia has brought suit in equity against him to compel him to
carry it out.    The bill also set forth that said Perce had collected
the rents of the estate to a large amount, and that, though having
money enough to pay the interest on the mortgages, he had re-
fused to do so, and had suffered the estate to be advertised for
sale under them ; and that said Julia " is informed and believes,
and therefore charges it to be true, that said Perce and others, and
said bank, have combined together for the purpose of allowing
said property to be sold under said mortgages, and thereby defeat
the purposes of said former bill brought against said Perce and
others."

.The charge, it will be observed, is not that the bank either sold
or intended to sell under the mortgages for the purpose of defeat-
ing said suit, but that Perce and others and the bank combined
together for the purpose of allowing the sale to be made and
thereby defeat the suit.    It is not clear how far the charge was
intended to affect the bank, for certainly the bank had no need to
combine with any person for the purpose of *allowing* itself to sell
under the mortgages after default.    It is not such a charge as
would entitle the complainants to relief against the bank or the
present owners, nor can it in our opinion amount to notice.    For
either purpose it should be more direct and determinate.    It is
at best a mere averment on information and belief, with nothing
definite alleged to substantiate it.    Indeed, the counsel for the
complainants rely in support of this point rather on matter set
forth in the amendments than on said charge ; but, inasmuch as
there is no allegation that the purchaser at the mortgage sale had

notice thereof, we have not considered the sufficiency of the matter so set forth.

The demurrer is sustained.

*John E. Lester, Amasa M. Eaton & Herbert Almy*, for complainants.

*James M. Ripley*, for respondent The Citizens' Savings Bank.

*Simon S. Lapham, Charles E. Salisbury & Daniel W. Fink*, for the other respondents.