### FRENCH *v.* GRAND BEACH CO.

### SAME *v.* BERRIEN CIRCUIT JUDGE.

### MOORE *v.* SAME.

1. SUBROGATION—"LEGAL SUBROGATION" DEFINED.
   The doctrine sometimes spoken of as "legal subrogation," which has long been applied by courts of equity, rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of, and to be vested with the rights of, the person to whom such payment is made, without agreement to that effect.

---

[1]Subrogation, 37 Cyc. pp. 366, 367, 370; 25 R. C. L. 121; 3 R. C. L. Supp. 1451; 4 R. C. L. Supp. 1628; 5 R. C. L. Supp. 1371; 6 R. C. L. Supp. 1512.

2. SAME — CONVENTIONAL SUBROGATION DEFINED—NOT APPLICABLE TO MERE VOLUNTEER.

"Conventional subrogation" arises from an' agreement between a debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof, and while such right is wholly independent of any interest in the property which the lender may have to protect, it does not inure to a mere volunteer who has no equities which appeal to the conscience of the court.

3. SAME—MORTGAGES—ASSIGNMENTS—EQUITY MAY REQUIRE SUBROGATION.

A mortgagee seeking the aid of a court of equity in the collection of a debt secured by mortgage, may be required by said court, to prevent loss of the property by the mortgagor, to assign said mortgage to a third person, who, at the request of the mortgagor, is ready and willing to advance the money to reimburse the first mortgagee for the money loaned, the interest accrued thereon, and all costs there incurred.

4. MORTGAGES—FORECLOSURE SALE—CONFIRMATION—SUBROGATION.

The court properly refused to confirm a mortgage foreclosure sale made under direction of the mortgagee in violation of the express terms of an order directing her to execute an assignment of said mortgage to a third person, subrogating him to her rights thereunder, on payment to her of all sums due thereon including interest and costs of foreclosure proceedings, tender of which she refused.

5. APPEAL AND ERROR—INTEREST—RIGHT OF APPELLANT WHO REFUSED TENDER TO INTEREST.

Where a mortgagee appealed from a decree of the court below directing her to assign the mortgage to a third person, subrogating him to her rights thereunder, on payment to her of all money owing thereunder, including interest and costs of foreclosure proceedings, and she refused tender thereof, on affirmance of said decree, on appeal, no interest is allowed her from date of said decree if the money tendered was deposited with the register

---

²Subrogation, 37 Cyc. pp. 368, 369, 376; ³Mortgages, 41 C. J. § 693; Subrogation, 37 Cyc. pp. 368, 472; 25 R. C. L. 1339; 5 R. C. L. Supp. 1373; ⁴Mortgages, 41 C. J. § 1441 (Anno); ⁵Interest, 33 C. J. § 159.

of deeds pursuant to the provisions thereof; otherwise interest at the rate of five per cent. is allowed until settlement of decree in Supreme Court.

BIRD, J., dissenting.

Appeal from Berrien; White (Charles E.), J. Submitted January 21, 1927. (Docket No. 170.) Decided July 29, 1927. Rehearing denied October 3, 1927.

Bill by L. M. French against the Grand Beach Company to foreclose a mortgage. From a decree denying confirmation of foreclosure sale, and granting an order of subrogation, plaintiff appeals. Affirmed.

Separate petitions for mandamus by L. M. French and William J. Moore to compel Charles E. White, circuit judge of Berrien county, to enter an order confirming a mortgage foreclosure sale, and to set aside an order of subrogation. Submitted January 21, 1927. (Calendar Nos. 32,674, 32,675.) Writs denied July 29, 1927.

*Milburn & Semmes* and *Rolland E. Barr* (*William J. Weldon*, of counsel), for plaintiffs.

*Knappen, Uhl & Bryant*, for defendants.

SHARPE, C. J. L. M. French, by assignment, became the holder and owner of two promissory notes, the payment of which was secured by a real estate mortgage, executed by the Grand Beach Company, a corporation. On default in the payment of one of the notes, she elected to and did declare the entire principal sum of both notes due and payable, as provided for in the mortgage. She soon thereafter filed her bill in the circuit court for the county of Berrien, in chancery, to foreclose the mortgage, and on June 9, 1925, secured the usual decree of foreclosure, under which a sale, pursuant to the statutory procedure therefor, was had. The trial court refused an order of con-

239—Mich.—37.

firmation, owing to certain defects in the proceedings, and a new sale was ordered. It was advertised to be held on April 5, 1926. Before this date had arrived, the Grand Beach Company arranged with Clarence L. Catherman for a loan sufficient to pay the sum decreed to be due Mrs. French and the interest thereon and all costs then incurred, on condition, however, that he should receive from her an assignment of her mortgage and be subrogated to her rights under the decree. A request that Mrs. French should comply with this arrangement was refused by her. Thereupon the Grand Beach Company petitioned the court which had made the decree for an order directing her to do so. Over the objection of Mrs. French, the court, after a hearing on the petition, made an order on March 31, 1926, in which, after reciting that it appeared to the court that Catherman was willing to make such loan providing he could be subrogated to the rights of Mrs. French as holder and owner of the mortgage, and that the Grand Beach Company could thereby secure an extension of time to pay the same, and that it would be in the best interest of the Chicago Title & Trust Company as trustee for the holders of bonds under a second mortgage on the premises that the Grand Beach Company "be given every opportunity to extend and renew its credit on said mortgage, and realize on the large potential value of the property" covered by it, and that Mrs. French "could in nowise be injured by the granting of the relief prayed for," and that "the whole plan of refinancing and the extension of time on said mortgage would be the best method known to this court of conserving all of the valuable properties covered by said mortgage in the interest of the said defendant, the Grand Beach Company, as well as its bond mortgage creditors," Mrs. French was ordered and directed to execute and deliver to Catherman "an assignment of her rights in said

mortgage, notes and decree  *  *  *  to the end that said Clarence L. Catherman may become fully subrogated" thereto, on payment to her of the sum then due her for principal, interest and costs, fixed by the court at the sum of $13,475.     It further provided that the sale advertised for April 5th be adjourned to April 12th.

On April 8th, Catherman, by his attorney, tendered to Mrs. French the amount fixed by the court, and demanded that she execute an assignment, then presented to her, pursuant to the order.     This instrument was in the usual form, but contained a covenant on her part that she had "not sold, transferred or conveyed any rights under said mortgage, and is now the owner thereof."     Mrs. French refused to execute the assignment, and, under her direction, the circuit court commissioner proceeded with the sale, and the property was purchased by William J. Moore for the sum of $13,500.     On the day of the sale, tender was again made, on condition that she execute the assignment, and was refused by her.     The trial court refused to confirm the sale made.

On April 26, 1926, a final decree was entered, containing substantially the provisions embodied in the order of March 31st, providing for a further tender and a deposit of the sum bid with the register of deeds, to be paid to Mrs. French on her execution of the assignment, and that she was not entitled to interest thereon after the 12th day of April, 1926.

From this decree plaintiff appeals.     She also, by petition to this court, sought a mandamus to compel the trial court to confirm the sale made to Moore. An order to show cause was granted, to which the circuit judge has made return.     A similar petition was filed by the purchaser, Mr. Moore, on which an order to show cause was also granted and a return made.     The appeal and the petitions for mandamus

were submitted at the same time, and they will all be disposed of in this opinion. Counsel for Mrs. French and Mr. Moore very tersely state the question presented:

"Could Mrs. French be compelled to assign her mortgage, notes and decree to Catherman?"

It is, however, also contended by them that any tender made by Catherman must have been "a present, absolute, unconditional tender intended to be in full payment and extinguishment of the mortgage."

In fairness it must be said that Mrs. French is the holder of some of the bonds secured by the second mortgage. She is therefore interested in compelling the Grand Beach Company to retire the first mortgage if they wish to save their property. It would seem that otherwise she would have accepted her money and executed the assignment.

The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as "legal subrogation," and has long been applied by courts of equity. *Stroh* v. *O'Hearn*, 176 Mich. 164, 177. There is also what is known as "conventional subrogation." It arises from an agreement between the debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof. It is wholly independent of any interest in the property which the lender may have to protect. It does not, however, inure to a mere volunteer who has no equities which appeal to the

conscience of the court.     In speaking of subrogation, it was said in *Stroh* v. *O'Hearn, supra:*

"It is proper in all cases to allow it where injustice would follow its denial, and in allowing it all injustice should be guarded against so far as possible."

The plaintiff here seeks the aid of a court of equity in the collection of the debt secured by the mortgage. The order made and the decree which followed require an assignment on her part, only after payment to her of the amount due on the mortgage and interest thereon and all costs and expenses of suit. Clearly, no injustice to her could result from such requirement.     The assignment presented to her contains no covenants other than as before stated.     It could make no difference to her whether, on accepting the money, she executed an assignment or a discharge. The cases in which this doctrine is applied, and the reasons therefor, are stated at length in 25 R. C. L. p. 1337 *et seq.* (§§ 22, 23).     We quote therefrom but one sentence:

"This is a just and reasonable rule.     It effects the intention of the parties, preserves to the payor the benefit of his payment, leaves the inferior lienor in his former position, inflicts no injury upon him, prevents injury to the payor through mistake or ignorance of the inferior lien, and works exact justice to all."

A somewhat similar question was before this court in *Moore* v. *Smith,* 95 Mich. 71.     The plaintiff was entitled to dower and homestead rights in lands on which her deceased husband had executed a mortgage to the defendant before their marriage.     Statutory foreclosure proceedings were begun and a sale had, at which the mortgagee became the purchaser.     Plaintiff sought to redeem, and to protect her rights demanded an assignment of the rights of the mortgagee, who was also the purchaser under the foreclosure proceedings.     On refusal she filed a bill to compel execu-

tion thereof.    It was contended there, as here, that her only remedy was to redeem from the sale.    This court said:

"The fact that the premises had gone to sale did not affect the complainant's right to an assignment of the mortgage from the defendant.    Here the only parties interested · were the defendant, claiming under the mortgage, and the complainant, who claims and is entitled to a homestead and dower interest in the land. She sought to acquire all the interest which the defendant had; not only to redeem, but to have his claim assigned to her for her protection.    This she was entitled to have to the extent of an assignment of the mortgage, and thus to be subrogated to all of defendant's rights and interests in the premises under the mortgage, with a lien thereunder to the extent of the mortgage interest."

In *Leser* v. *Smith*, 219 Mich. 509, it was held that parents, who furnished the money to redeem from a foreclosure sale on property owned by their son, were equitably entitled to be subrogated to the rights of the mortgagee in the mortgage.    The doctrine of subrogation in such cases seems to be so well established that we refrain from further discussion or quotation from authorities, but content ourselves with calling attention to the following: *Simonson* v. *Lauck*, 105 N. Y. App. Div. 82 (93 N. Y. Supp. 965) ; *Downer* v. *Miller*, 15 Wis. 677 (* 612) ; *Commercial & Farmers Bank* v. *Scotland Neck Bank*, 158 N. C. 238 (73 S. E. 157) ; *Browder & Co.* v. *Hill*, 69 C. C. A. 499, 136 Fed. 821; *Warford* v. *Hankins*, 150 Ind. 489 (50 N. E. 468) ; *Manilla Anchor Brewing Co.* v. *Raw Silk Trading Co.*, 163 N. Y. App. Div. 30 (148 N. Y. Supp. 119).    The only case to which counsel call attention, or which we have been able to find, which holds to the contrary, is *Lackawanna Trust & Safe Deposit Co.* v. *Gomeringer*, 236 Pa. 179 (84 Atl. 757). It was there said that as the debtor "could derive no equitable rights from paying its own debt  *   *   *

no one could claim such right through it." In so holding, the doctrine of conventional subrogation was entirely lost sight of. This decision proved troublesome to that court. In the late case of *Levin* v. *National Bank,* 277 Pa. 350 (121 Atl. 105), when referring to it, it was said:

"It has no value as a precedent, however, aside from its controlling facts."

The claim of the plaintiff that she should not be required to execute an assignment is answered by the following from *Moore* v. *Smith, supra:*

"The decree of the court below was properly entered, requiring the defendant to convey his mortgage interest in the premises upon the payment of the amount of his claim."

The fact that plaintiff is the holder of some of the bonds secured by the second mortgage did not justify her refusal to execute the assignment. The legal rights of the holders of those bonds would have been in no way affected had she done so. They were issued subject to the lien of the first mortgage, which had been assigned to her. Their security is not affected in any way by the order made. The holders still have all the rights of a junior incumbrancer. It is true that if the Grand Beach Company be compelled to redeem by payment to plaintiff, or to the purchaser at the sale, without assignment, the second mortgage will then stand as a first mortgage. But, unless able to do so, the company will lose its property. It is to prevent such loss that a court, in the exercise of its equitable jurisdiction, may secure subrogation to the person who, at the request of the mortgagor, is ready and willing to advance the money to reimburse the first mortgagee for the money loaned and the interest accrued thereon and all costs there incurred.

A similar question was presented in *Levy* v. *Martin,* 48 Wis. 198 (4 N. W. 35). On page 207 it is said:

"If the plaintiff is subrogated to Martin's rights under the $600 mortgage, Martin has precisely the same security he had before this mortgage was paid; no more, no less. So far as the mortgages given by Mrs. Richter and husband are concerned, such priority would leave him just where he stood when they were executed. * * * He has really the same rights and the same security for the payment of those mortgages that he had then. What ground has he then to complain of the subrogation of the plaintiff to his rights under that mortgage? Such subrogation will leave him precisely where he was when the plaintiff advanced his money to the executors."

It is urged that, in any event, the sale to Mr. Moore should have been confirmed. The tender was made on behalf of Catherman to Mrs. French before the sale was had. She refused to accept it. The sale, made under her direction thereafter, was in violation of the express terms of the order of March 31st, and the court very properly refused to confirm it.

It is also urged that Mrs. French is entitled to interest until decree is entered in this court. The record does not disclose whether Catherman deposited the money found to be due her with the register of deeds pursuant to the provision in the decree. If he did deposit it, she is not entitled to interest thereafter. If he did not, interest will be allowed her until the settlement of decree in this court.

A decree may be here entered in conformity with this opinion. The defendants in the case appealed and in the motions denied will be entitled to single costs as against Mrs. French.

SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred with SHARPE, C. J. CLARK, J., did not sit.

BIRD, J. (*dissenting*). My views of this case are at variance with those expressed by Chief Justice SHARPE. The only important question involved is whether Mrs.

French, the owner of the mortgage on defendant's property, can be compelled against her will to assign it to a *volunteer*.    In many cases in many courts assignments of mortgages have been compelled, but, so far as I have been able to discover, it has always been upon the petition of some person who had an interest or equity in the mortgaged property, which would be difficult to protect unless an assignment or subrogation was ordered.    This is, indeed, a just rule. But to allow a volunteer, a stranger to the property, to present himself to the mortgagee and say "I am a friend of the mortgagor, I am willing to loan him sufficient funds to pay your mortgage, and demand that you assign it to me," and be able to enforce the demand, will introduce an entirely new practice in the law of mortgages.

The rule which has been followed in like cases is well stated in 27 Cyc. p. 1294:

"A mortgagor cannot compel the holder of the mortgage to receive payment of the amount due from a third person and assign the mortgage to the latter; and when a third person has become entitled to succeed to the rights of the mortgagee, the courts will not generally order or compel the latter to execute a formal assignment of the security because the rights of such third person can be perfectly well worked out by the application of equitable principles, without his holding the formal title to the mortgage.    But an assignment may be ordered where it is necessary to protect an unquestioned right, which cannot be made effective without the legal title to the securities, or to prevent a manifest injustice.    The right to redeem a mortgage does not carry with it the right, on such redemption, to an assignment of the mortgage, unless the redeeming party has the position of a surety, or can be regarded as a surety for the mortgage debt."

The following cases support the text:    *McCulla* v. *Beadleston,* 17 R. I. 20 (20 Atl. 11) ; *Holland* v. *Savings Bank,* 16 R. I. 734 (19 Atl. 654, 8 L. R. A. 553) ; *Bigelow* v. *Cassedy,* 26 N. J. Eq. 557; *Ellsworth*

v. *Lockwood*, 42 N. Y. 89; *Gilpin* v. *Brooks*, 226 Mass. 322 (115 N. E. 421); *Hopkins Manfg. Co.* v. *Ketterer*, 237 Pa. 285 (85 Atl. 421, Ann. Cas. 1914B, 558); *Gooderham* v. *Traders Bank*, 16 Ont. 438; *Strasbaugh* v. *Dallam*, 93 Md. 712 (50 Atl. 417); *Butler* v. *Taylor*, 5 Gray (Mass.), 455; *Lackawanna Trust & Safe Deposit Co.* v. *Gomeringer*, 236 Pa. 179 (84 Atl. 757).

*Holland* v. *Savings Bank, supra*, was a bill filed to compel an assignment of a mortgage upon payment of the amount due. The court, in denying the prayer of complainant, said in part:

"We will first consider whether the bill as originally filed showed that the said Julia had any right to have the mortgages assigned to her upon paying to the holder the amount due thereon, together with expenses incurred by the holder in advertising, etc. The rule which is the more generally recognized is that a mortgagee cannot be required to assign the mortgage upon receiving the amount due thereon unless the person making payment is entitled to such assignment for some equitable reason, but can only be required to release or discharge the debt and mortgage, or, if the person making payment prefers, to surrender them to him, uncanceled. This is because the mortgagee, like any other creditor, is not under any obligation to sell and transfer his claim to another, but is only under obligation to accept payment thereof when duly tendered, and because he is entitled, under his mortgage, if the debt is not paid as stipulated, to sell the estate for its payment, or to foreclose in some other mode as provided by law. *Chedel* v. *Millard*, 13 R. I. 461; *Butler* v. *Taylor*, 5 Gray (Mass.), 455; *Lampson* v. *Drake*, 105 Mass. 564; *Lamb* v. *Montague*, 112 Mass. 352; *Hamilton* v. *Dobbs*, 19 N. J. Eq. 227; *Bigelow* v. *Cassedy*, 26 N. J. Eq. 557; *Gatewood* v. *Gatewood*, 75 Va. 407; *Chase* v. *Williams*, 74 Mo. 429; *Ellsworth* v. *Lockwood*, 42 N. Y. 89."

In *Ellsworth* v. *Lockwood, supra*, the same question was before the court, and it said in part:

"Upon the whole, I do not think it can be said to be the law of this State, that the right to redeem a mort-

gage, that is, the right to compel the holder of it to accept or receive payment of it, after it is due and payable, carries with it the right upon such redemption to an assignment of the mortgage and of the bond or other instrument evidencing the mortgage debt, or of either, unless the redeeming party has the position of surety or can be regarded as surety for the mortgage debt.   As in the principal case, it is impossible in any way to regard the plaintiff as surety for the payment of Lockwood's bond and mortgage, my conclusion is that he was not entitled to an assignment of them at the time he, through MacGregor, demanded it."

In *Strasbaugh* v. *Dallam,* 93 Md. 712 (50 Atl. 417), where the same question was involved, the court said:

"We do not mean to decide that the appellant was under any obligation to sell and assign his mortgage at the request of Dallam's children.   They, as devisees of the farm, were, of course, entitled to pay off and extinguish the mortgage debts, but they could not compel him to sell or assign it to any one."

25 R. C. L. p. 1324, has this to say on the question:

"While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere *volunteer,* who, without any duty, moral or otherwise, pays the debt of another; for such a person can establish no equity, and can obtain the right of substitution by contract only."

The other cases cited are to the same effect as those quoted from.   Perhaps a word should be said concerning the case of *Lackawanna Trust & Safe Deposit Co.* v. *Gomeringer,* 236 Pa. 179 (84 Atl. 757).   Some doubt has been cast upon the holding in that case. That case is in accord with the other cases of similar facts where an attempt has been made to compel an assignment of a mortgage to a mere volunteer.   A reference to a subsequent decision of that court will show it did not intend to overrule the holding in the *Lackawanna Case:*

"Generally speaking, he is not required, on receipt of the indebtedness, to assign or transfer the mortgage; he can only be required to satisfy it. The circumstances, however, may be such that when the debt is paid he may be required to assign the instrument for the protection of the party making the payment," etc. *Hopkins Manfg. Co.* v. *Ketterer*, 237 Pa. 285 (85 Atl. 421, Ann. Cas. 1914B, 558).

A reasonable amount of industry has failed to find a case which violates this rule. Wherever assignment has been compelled the petitioner has been a surety or has had some interest or equity to serve, which was difficult to protect in any other way. Why should a court of equity violate the rule to assist a volunteer, one who is not a surety for the obligation and has no interest or equity in the property mortgaged? Mr. Catherman, to whom an assignment has been ordered in this case, has no interest or equity in the mortgaged property. Neither is he a surety on the obligations of defendant. It will probably be admitted that defendant could do nothing but pay the mortgage debt and get a release. Catherman is the agent of defendant. How can it authorize Catherman to get larger rights than it is entitled to? Defendant is not entitled to an assignment, but, by some mysterious change, Catherman is said to be entitled to one, although whatever rights he has he gets from defendant.

The mortgagor cannot demand that a mortgage be assigned to a third person upon payment of the amount due thereon. *Gilpin* v. *Brooks*, 226 Mass. 322 (115 N. E. 421); *Gooderham* v. *Traders Bank*, 16 Ont. 438; *Ellsworth* v. *Lockwood*, 42 N. Y. 89.

Who is a volunteer?

"A person who is under no obligation whatever to pay the debt of another secured by a mortgage, and who has no interest in or relation to the property, is a volunteer, within the meaning of the rule." 25 R. C. L. p. 1325.

See, also, *Boley* v. *Daniel,* 72 Fla. 121 (72 South. 644, L. R. A. 1917A, 734) ; *Good* v. *Golden,* 73 Miss. 91 (19 South. 100, 55 Am. St. Rep. 486) ; *Campbell* v. *Foster Home Ass'n,* 163 Pa. 609 (30 Atl. 222, 26 L. R. A. 117, 43 Am. St. Rep. 818).

Some criticism is made of Mrs. French because she is insisting on her legal rights, although it is said she would lose nothing if she should concede to Catherman more than his rights.    Mrs. French owns some bonds secured by a second mortgage on defendants' property. If the first mortgage is paid and released the second mortgage moves up into first place and thereby the value of her bonds will increase in value.    She may be actuated by this motive.    Mrs. French's motive for insisting on her legal rights is immaterial.    She is probably selfish like most of the human race, but this furnishes no reason why she should not insist upon her legal rights, neither does it furnish any reason why she should grant to Catherman more than his legal rights.

I think the holding of the trial court should be reversed, and the mortgage sale confirmed, with costs to plaintiff.    The writ should be granted if necessary in the mandamus cases.