# STATE OF MICHIGAN

# COURT OF APPEALS

NICOLINO ALBACE and MARIA ALBACE,

        Plaintiffs-Appellants,

v

RAAW ENTERPRISES LLC, RAAW
MANAGEMENT LLC, ABDUL ALCODRAY,
WARDEH KHALIFA, and REDA KHALIFA,

        Defendants-Appellees.

UNPUBLISHED
June 21, 2016

No. 326435
Wayne Circuit Court
LC No. 13-008537-CK

Before: M. J. KELLY, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

In this equitable subrogation action, plaintiffs appeal as of right an order denying their motion for summary disposition and granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). We reverse with respect to all defendants except Wardeh Khalifa, and remand to the trial court with instructions to enter judgment for plaintiffs against the remaining defendants for $90,931.32 plus interest, costs, and attorney fees.

## I. FACTS

On May 23, 2002, plaintiffs sold three improved commercial lots, located on Michigan Avenue in Dearborn, to defendant RAAW Enterprises LLC by land contracts.[1] One of the lots contained a restaurant, which plaintiffs sold to defendant RAAW Management LLC for $400,000. RAAW Management paid a down payment of $100,000 for the restaurant property. The remaining $300,000 was to have been paid, without interest, within 180 days of defendants taking possession. It was not paid.

---

[1] Because RAAW Enterprises defaulted, in 2009 plaintiffs brought a land contract forfeiture action in the District Court for the 19th Judicial District and prevailed.

-1-

Near the end of the 180-day period, individual defendant Abdul Alcodray spoke with plaintiff Nicolino Albace[2] and told him that RAAW Management could not pay the $300,000 at that time. Pursuant to an amended purchase agreement and a promissory note, Albace agreed to take $200,000 at zero interest within 180 days of the new agreement, and the remaining $100,000 plus interest monthly over seven years. Near the end of the second 180-day period, Alcodray told Albace verbally and by letter that RAAW Management could not pay the $200,000 then due unless Albace allowed the property containing the restaurant to be mortgaged so that RAAW Management could secure a loan. Albace agreed.

On May 16, 2003, RAAW Management (by Alcodray and Wardeh Khalifa) executed a promissory note to National City Bank (the Bank) for $250,000, of which $200,000 was paid to Albace in satisfaction of the overdue amount. RAAW Enterprises executed a guaranty agreement accepting the obligation to repay RAAW Management's promissory note. Alcodray and individual defendant Reda Khalifa each entered into a guaranty agreement with the Bank agreeing to be individually liable on the promissory note. Individual defendant Wardeh Khalifa (Alcodray's sister and Reda Khalifa's wife) did not sign a guaranty agreement. As security for the loan, plaintiffs granted a mortgage to the Bank[3] on the property. No separate promissory note was created to contractually require defendants to repay plaintiffs in the event that four defendants each defaulted on their obligations under the promissory note and the Bank foreclosed on plaintiffs' property. At that point, RAAW Management owed plaintiffs $100,000 on the purchase of the restaurant property.

In the 2009 land contract forfeiture action (see n 1), plaintiffs were awarded the right to possession of the relevant parcel, and a money judgment to be paid within 90 days in order for defendants to avoid eviction. Defendants immediately stopped paying on the Bank's promissory note.[4] By its letter dated December 15, 2010, the Bank demanded that the maker of the promissory note (RAAW Management) and each guarantor (Abdul Alcodray, Reda Khalifa, and RAAW Enterprises) pay the balance of the promissory note in full. When no payment was forthcoming by March 2012, the Bank again demanded full payment. In that letter, the Bank also informed plaintiffs that it would foreclose on the mortgage if the maker and/or guarantors did not pay the balance in full.

None of the defendants responded to the Bank's demands to repay their debt. On May 25, 2012, the Bank advised plaintiffs that foreclosure could be avoided and the mortgage

---

[2] In this opinion, we refer to Nicolino Albace as "Albace" because Maria Albace had become ill and did not participate in the relevant transactions.

[3] PNC Bank is successor to National City Bank.

[4] Defendants state in their brief that "perhaps [the Albaces] did not realize that there would be literally no reason for Defendants to continue paying a mortgage for buildings that they no longer occupied." But defendants' various contractual obligations to the Bank arose under the promissory note and guaranty agreements that they signed with the Bank, and were made without any conditions regarding their occupancy of the building.

discharged by a lump sum payment of $90,931.92. Plaintiffs paid off RAAW Management's promissory note on June 19, 2012, in order to avoid foreclosure on their property. Plaintiff then filed this case to recoup that money from defendants under several theories, all of which have been dismissed except plaintiffs' claim for equitable subrogation. Subsequently, the parties filed cross-motions for summary disposition. The trial court granted defendants' motion and denied plaintiffs' motion after concluding that plaintiffs were jointly liable with RAAW Management on the promissory note.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Lakeview Commons v Empower Yourself, LLC*, 290 Mich App 503, 506; 802 NW2d 712 (2010). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim and should be granted only if, after considering the evidence in the light most favorable to the opposing party, no genuine issue of any material fact exists. *Id.*; see also *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

The proper interpretation of a contract is also a question of law that is reviewed de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). "An inquiry into the nature, scope, and elements of a remedy is, in sum, a question of law to be reviewed de novo." *Hartford Accident & Indemnity Co v Used Car Factory, Inc*, 461 Mich 210, 215 n 5; 600 NW2d 630 (1999).

## III. ANALYSIS

The facts are not in dispute in this case. Defendants argue that they were entitled to summary disposition because equitable subrogation is not appropriate in this case. The doctrine of equitable subrogation is well-established in Michigan jurisprudence:

> The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as 'legal subrogation,' and has long been applied by courts of equity. [*French v Grand Beach Co*, 239 Mich 575, 580; 215 NW 13 (1927), citing *Stroh v O'Hearn*, 176 Mich 164, 177; 142 NW 865 (1913).]

More recently, our Supreme Court emphasized that "[e]quitable subrogation is a flexible, elastic doctrine of equity," the application of which "should and must proceed on the case-by-case analysis characteristic of equity jurisprudence." *Hartford Accident & Indemnity Co*, 461 Mich at 215 (citation omitted).

The following concepts are inherent in the *Stroh* definition quoted above. First, "[s]ubrogation does not depend upon contract. It is an equitable principle." *Smith v Sprague*, 244 Mich 577, 579; 222 NW 207 (1928). As an equitable principle, its application "is proper in all cases . . . where injustice would follow its denial." *Stroh*, 176 Mich at 177. Second, the doctrine is not appropriate when the debt is paid by one who is *not* making the payment in order

to protect his own security interest. "Subrogation is . . . proper to apply whenever persons *other than mere volunteers* pay a debt or demand which in equity and good conscience should have been satisfied by another." *Id.* (emphasis added). Third, the doctrine is not appropriate when the debt is paid by one who is himself liable on that debt. "[Subrogation] is never allowed in favor of a person who is himself personally liable for the debt he discharges by payment." *Machined Parts Corp v Schneider*, 289 Mich 567, 576; 286 NW 831 (1939) (citations omitted).

Defendants first argue that plaintiffs were mere volunteers because they voluntarily entered into the mortgage for their own benefit. We disagree. "A 'volunteer' is one who intrudes himself into a matter which does not concern him, or one who pays the debt of another without request, when he is not legally or morally bound to do so, and when he has no interest to protect in making such payment." *Detroit Auto Inter-Ins Exch v Detroit Mut Auto Ins Co*, 337 Mich 50, 53-54; 59 NW2d 80 (1953), quoting 44 Words and Phrases (Perm ed), p 443. Plaintiffs did not inject themselves into a matter that did not concern them. They paid defendants' remaining debt after RAAW Management defaulted on the promissory note and RAAW Enterprises, Alcodray and Reda Khalifa defaulted on their obligations under the guaranty agreements because plaintiffs had an interest to protect in making that payment. Had plaintiffs not done so, the Bank would have foreclosed on their property. See *Detroit Auto Inter-Ins Exch*, 337 Mich at 54 (holding that a payment made under compulsion is not voluntary).[5] In short, plaintiffs were not mere volunteers when they paid the money defendants owed to the Bank because plaintiffs had to do so to protect their financial interest in the property.

Defendants next argue that plaintiffs are not entitled to equitable subrogation because plaintiffs themselves were liable to repay the underlying debt, along with RAAW Management. Defendants do not attempt to argue that the promissory note itself makes plaintiffs liable for the debt. In fact, plaintiffs were neither makers of the promissory note nor guarantors. Instead, defendants argue that the mortgage makes plaintiffs liable on the promissory note. In partial support of this position, defendants cite *Cooklin v Cooklin*, 260 Mich 69, 70; 244 NW 232 (1932), for its holding that a promissory note is not required when the corresponding mortgage contains a promise to pay. The flaw in defendants' argument is that there *is* in fact a promissory note in this case, and the mortgage does not contain a promise to pay the debt evidenced by the promissory note.

This Court's primary obligation when interpreting a contract is to determine the contracting parties' intent. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). After reviewing the promissory note and the mortgage, we are persuaded that the parties did not intend plaintiffs to be liable for repayment of the loan evidenced by the promissory note.

---

[5] Even plaintiffs' initial agreement to enter into the mortgage with the Bank was not voluntary because they did so "at the instance, solicitation, or request of" defendants, whose liability plaintiffs were securing. See *Detroit Auto Inter-Ins Exch*, 337 Mich at 54. Plaintiffs put their property at risk because of defendants' assertions that it was the only way plaintiffs would be able to recover the money that defendants owed them.

Defendants argue that the miscellaneous provision in the mortgage entitled "Joint and Several Liability" makes plaintiffs liable to repay the loan. It does not. The provision states:

> All obligations of Borrower and Grantor *under this Mortgage* shall be joint and several, and all references to Grantors shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. *This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.* [Mortgage, p 11 (emphasis added).]

First and foremost, nothing in this provision makes plaintiffs (the Grantors) jointly and severally liable with RAAW Management for the obligations in the *promissory note*; rather, it makes RAAW Management (the Borrower) jointly and severally liable with plaintiffs for the obligations *in the Mortgage*. Again, a mortgage *can* set forth the terms of indebtedness, eliminating the need for a promissory note, *Cooklin*, 260 Mich at 70, but this one does not. The mortgage contains no promise to make payments on the underlying debt. The mortgage also contains no recital of any of the material terms found in a promissory note, such as a statement of the amount being borrowed, details on the amount and frequency of payments, a statement of the interest rate to be charged, conditions for early repayment, late charges, or other provisions. All of these provisions are in the promissory note, for which only RAAW Management is a party and for which Alcodray, Reda Khalifa, and RAAW Enterprises are the only guarantors.

Defendants next argue that the language in the section entitled "PAYMENT AND PERFORMANCE" makes the Borrower (RAAW Management) and the Grantors (plaintiffs) equally responsible to repay the debt. This section states: "Except as otherwise provided in this Mortgage, *Borrower* shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and *Borrower and Grantor* shall strictly perform all *Borrower's and Grantor's obligations* under this *Mortgage*." The requirement of payment for the loan clearly applies only to the "Borrower." The second part of the provision just as clearly means that the Borrower and the Grantors are both liable to perform all of the obligations "*under this Mortgage*." This section is in harmony with the Joint and Several Liability section discussed above. Again, the mortgage does not include a promise to repay the $250,000 that RAAW Management borrowed from the Bank in order to *partially* pay its debt to plaintiffs. Rather, the mortgage includes obligations such as a duty to pay taxes, to maintain the property, to comply with environmental laws, to prevent nuisance and waste on the property, to refrain from removing any improvements to the property, to comply with governmental regulations, to maintain property damage insurance, and more. Defendants' argument that plaintiffs are jointly and severally liable for repayment of the loan is unfounded and disingenuous. The unambiguous language of the mortgage establishes that the parties intended it to be what its title proclaims it to be—a mortgage—by which plaintiffs conveyed title to the restaurant property as mere security for the money debt owed by RAAW Management and guaranteed by Alcodray and Reda Khalifa.

Finally, defendants argue that equitable subrogation should not apply because plaintiffs should have obtained an "intercreditor agreement" obligating defendants to repay them if they repaid the Bank, and that, even if plaintiffs are entitled to the amount they paid the Bank, they are not entitled to interest or attorney fees because they were not assignees of the promissory note. Defendants cite no authority for these positions, and we are aware of none. Existing case law establishes that plaintiffs are entitled to anything and everything to which the Bank was

entitled upon defendants' default on the promissory note, and that this equitable doctrine applies in the absence of an "intercreditor agreement" described by defendants:

> The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, *is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect*. [*French*, 239 Mich at 580 (emphasis added).]

We hold that the doctrine of equitable subrogation applies against all defendants in this case, except Wardeh Khalifa, because plaintiffs paid a debt for which RAAW Management was primarily liable and individual defendants Alcodray and Reda Khalifa were secondarily liable, and plaintiffs did so to protect a security interest that they held. See *id*. Therefore, plaintiffs are "entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made," in this case, those of the Bank as set forth in the promissory note. See *id.* at 580.

Defendants further argue that plaintiffs' motion for summary disposition was properly denied because there is a genuine issue of material fact as to whether plaintiffs are liable on the underlying debt based on the following mortgage provision, quoted in relevant part:

> ADDENDUM TO DEFINITION OF NOTE. In addition to any Promissory Note described in the definition of "Note" below, the word "Note" also means, Promissory Note dated May 16, 2003 in the original principal amount of $250,000 from *Grantor* to Lender. [Mortgage, p 10.]

Again, we disagree.

Summary disposition under MCR 2.116(C)(10) is not premature, even before discovery is complete, if "further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion." *Prysak v RL Polk Co*, 193 Mich App 1, 11; 483 NW2d 629 (1992). As defendants admitted in oral argument, this document has never been produced, despite the fact that this case was filed on June 29, 2013, and discovery was conducted, including PNC Bank's records having been subpoenaed. It appears both from its absence as well as from other record evidence that this language was erroneously included in the mortgage. First, plaintiff Nicolino Albace swore by affidavit that he never agreed to pay defendants' debt; rather, he relied on the individual defendants' guaranty agreements to ensure he did not lose his property to foreclosure. Second, the Bank never demanded payment from plaintiffs, as it would have if plaintiffs had signed a promissory note. Under these circumstances, further discovery stands virtually no chance of unearthing this document, and defendants have failed to establish a genuine issue of material fact that would preclude summary disposition for plaintiffs.

We hold that the trial court erred in denying plaintiffs' motion for summary disposition because there is no genuine issue of material fact and plaintiffs are entitled to judgment as a matter of law pursuant to the doctrine of equitable subrogation.

Reversed and remanded to the trial court with instructions to enter judgment for plaintiffs against all defendants except Wardeh Khalifa for $90,931.32 plus interest, costs, and attorney fees as provided in the promissory note. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly