**S T A T E   O F   M I C H I G A N**
**C O U R T   O F   A P P E A L S**

FIRST FINANCIAL BANK, N.A.,

        Plaintiff/Counter-Defendant-
        Appellee,

v

SCOTT T. BOSGRAAF, Individually and as Co-
Trustee of the SCOTT T. BOSGRAAF TRUST
and the SUZANNE LEE BOSGRAAF TRUST,

        Defendant/Counter-Plaintiff/Cross-
        Defendant-Appellant,

and

SUZANNE LEE BOSGRAAF, Individually and as
Co-Trustee of the SCOTT T. BOSGRAAF TRUST
and the SUZANNE LEE BOSGRAAF TRUST,
LAKEWOOD TWO, LLC, BAKER LOFTS, LLC,
and AUTO SPORTS UNLIMITED, INC.,

        Defendants/Counter-
        Plaintiffs/Cross-Defendants,

and

UNITED STATES DEPARTMENT OF
TREASURY, CRESCENT ELECTRIC SUPPLY
CO., TOWERCO ASSETS, LLC, NEXTEL
WEST CORP., METRO PCS MICHIGAN, INC.,
CITIZENS BANK, FOURTEEN
CORPORATION, and REPUBLIC BANK,

        Defendants,

and

HUNTINGTON NATIONAL BANK,

        Defendant/Cross-Plaintiff/Third-
        Party Plaintiff,

UNPUBLISHED
August 11, 2015

No.   320881
Ottawa Circuit Court
LC No.   11-002488-CK

and

CENTRAL LOFTS, LLC,

        Third-Party Defendant,

and

CB 2010, LLC,

        Intervening Defendant/Counter-
        Plaintiff.

---

FIRST FINANCIAL BANK, N.A.,

        Plaintiff/Counter-Defendant-
        Appellee,

v

SCOTT T. BOSGRAAF, Individually and as Co-
Trustee of the SCOTT T. BOSGRAAF TRUST
and the SUZANNE LEE BOSGRAAF TRUST,
SUZANNE LEE BOSGRAAF, Individually and as
Co-Trustee of the SCOTT T. BOSGRAAF TRUST
and the SUZANNE LEE BOSGRAAF TRUST,
LAKEWOOD TWO, LLC, BAKER LOFTS, LLC,
and AUTO SPORTS UNLIMITED, INC.,

        Defendants/Counter-
        Plaintiffs/Cross-Defendants,

and

UNITED STATES DEPARTMENT OF
TREASURY, CRESCENT ELECTRIC SUPPLY
COMPANY, TOWERCO ASSETS, LLC,
NEXTEL WEST CORPORATION, METRO PCS
MICHIGAN, INC., FOURTEEN
CORPORATION, and REPUPLIC BANK,

        Defendants,

and

CITIZENS BANK,

        Defendant-Appellant,

No.   321004
Ottawa Circuit Court
LC No.   11-002488-CK

and

HUNTINGTON NATIONAL BANK,

> Defendant/Cross-Plaintiff/Third-
> Party Plaintiff,

and

CENTRAL LOFTS, LLC,

> Third-Party Defendant,

and

CB 2010, LLC,

> Intervening Defendant/Counter-
> Plaintiff.

---

Before: TALBOT, C.J., and KELLY and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals,[1] Scott T. Bosgraaf, in his individual and representative capacities, and Citizens Bank ("Citizens"), appeal as of right from an order of the trial court granting summary disposition with regard to various claims in favor of First Financial Bank, N.A. ("First Financial"). We affirm.

## I. FACTS

This dispute arises out of the complicated, and ultimately failed, business operations of Scott Bosgraaf and his wife, Suzanne Bosgraaf. The Bosgraafs operated a number of businesses, largely in real estate. One business, Auto Sports Unlimited, Inc. ("ASU"), would buy and resell automotive parts. ASU was located at 200 North Franklin in Zeeland (the "Franklin Property").[2] The Bosgraafs financed their business operations through a series of loans originated by Irwin Union Bank and Trust ("Irwin Union"), each secured by various security interests. At issue in this appeal are two assets: the Franklin Property and the assets of ASU.

---

[1] *First Financial Bank, NA v Scott T. Bosgraaf Trust*, unpublished order of the Court of Appeals, entered April 25, 2014 (Docket No.'s 320881, 320905, 320965, 320972, and 321004).

[2] For clarity, we refer to Scott Bosgraaf, Suzanne Bosgraaf, and their various businesses collectively as the Bosgraafs.

-3-

While the history of financial transactions is complex, only a few transactions are of relevance here. On June 30, 2005, Irwin Union and the Bosgraafs executed a loan agreement (the "2005 Agreement"), as well as two notes, a promissory note and a standby letter of credit ("SLC"). In part, these notes were secured by a mortgage on the Franklin Property and a security interest in the ASU assets. The parties executed a separate security agreement regarding the ASU assets (the "2005 Security Agreement") and a mortgage on the Franklin Property (the "2005 Mortgage"). The 2005 Mortgage was recorded on July 19, 2005.

In April, 2006, the Bosgraafs refinanced most of their debt by borrowing from two other banks, Republic Bank ("Republic") and Huntington National Bank ("Huntington"). The Bosgraafs granted Republic a mortgage on the Franklin Property, which was recorded on May 2, 2006 (the "Republic Mortgage"). The Bosgraafs granted Huntington a security interest in the ASU assets. Irwin Union received over $3M from Republic and $6.25M from Huntington. While this paid the majority of the debt owed to Irwin Union, the SLC remained unpaid.

Subsequently, Irwin Union and the Bosgraafs executed two relevant agreements. The first, effective June 1, 2006, was titled as a "Third Amendment to Loan Agreement" (the "Third Amendment"). On November 15, 2007, the Bosgraafs entered another agreement with Irwin Union, titled as the "Amended and Restated Loan Agreement" (the "2007 Agreement"). First Financial subsequently purchased all of the loans held by Irwin Union from the Federal Deposit Insurance Corporation ("FDIC") after it became a receiver for Irwin Union. The instant litigation commenced after the Bosgraafs defaulted on their debt to First Financial. Relying on the 2005 Mortgage, First Financial first attempted to foreclose on the Franklin Property by advertisement. CB 2010, who then held the Republic Mortgage, filed suit seeking to prevent the foreclosure. First Financial then filed a complaint seeking judicial foreclosure of the Franklin Property. Huntington filed a separate suit seeking a determination of who, as between First Financial and Huntington, was entitled to the ASU assets.

Huntington and First Financial settled their dispute regarding the ASU assets. In 2012, First Financial, the Bosgraafs, and Citizens, who now held the Republic Mortgage, filed competing motions for summary disposition to determine priority to the Franklin Property. The trial court initially ruled that the 2007 Agreement extinguished the 2005 Mortgage, which left Citizens as the senior lienholder with respect to the Franklin Property. First Financial moved for reconsideration of this decision. On reconsideration, the trial court vacated its opinion. It ruled that the 2005 Mortgage survived the 2007 Agreement, and that this mortgage placed First Financial in a senior position with respect to the Franklin Property. The trial court also granted summary disposition in First Financial's favor regarding several cross-claims brought by the Bosgraafs.

## II. STANDARD OF REVIEW

A trial court's decision whether to grant reconsideration of an earlier decision is reviewed for an abuse of discretion.[3] The parties do not argue that the trial court abused its discretion when it decided to reconsider its earlier opinion and order, and no abuse of discretion is apparent from the record. Having found no abuse of discretion in this regard, the question is whether the decision on reconsideration was correct. A trial court's decision to grant or deny summary disposition is reviewed de novo.[4] Likewise, the proper interpretation of a contract is a question of law, reviewed de novo.[5] The proper interpretation of a statute is also a question of law, reviewed de novo.[6]

The trial court decided various motions in its opinion. First Financial brought its motions pursuant to MCR 2.116(C)(8), (C)(9), and (C)(10). The Bosgraafs sought summary disposition pursuant to MCR 2.116(C)(10). Citizens sought summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). A motion brought pursuant to MCR 2.116(C)(8) should be granted if a complaint fails to state a claim upon which relief may be granted.[7] In reviewing the motion, all factual allegations stated in the complaint, as well as reasonable inferences drawn from those allegations, are accepted as true.[8] Summary disposition is appropriate under MCR 2.116(C)(9) if a party fails to plead a valid defense to a claim.[9] As with a motion brought under MCR 2.116(C)(8), a motion brought under MCR 2.116(C)(9) is decided by looking only to the pleadings.[10]

A motion brought pursuant to MCR 2.116(C)(10) evaluates the factual sufficiency of the complaint.[11] To evaluate a motion brought under this rule, a trial court must consider the evidence submitted by the parties in a light most favorable to the party opposing the motion.[12]

---

[3] *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008).

[4] *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 437; 695 NW2d 84 (2005). See also *Van Reken v Darden, Neef & Heitsch*, 259 Mich App 454, 674 NW2d 731 (2003).

[5] *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

[6] *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 97; 754 NW2d 259 (2008).

[7] *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 210; 859 NW2d 238 (2014).

[8] *Id.*

[9] *Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 589; 848 NW2d 425 (2014).

[10] MCR 2.116(G)(5).

[11] *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

[12] *Id.*

"Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law."[13]

## III. DISCUSSION

The primary issue before us is whether the trial court correctly determined that First Financial's interest in the Franklin Property was senior to the interest held by Citizens.[14] As it pertains to the priority of interests in land, Michigan is a race-notice state.[15] This means that "the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers."[16] Looking solely at the recording dates of the mortgages at issue, there can be no dispute regarding who holds the senior interest in the Franklin Property. Because it was the first mortgage recorded, the 2005 Mortgage has priority over the Republic Mortgage. The focus of the arguments raised by the Bosgraafs and Citizens is on whether Irwin Union agreed to either discharge the 2005 Mortgage or subordinate it to the Republic Mortgage. We turn first to the arguments raised by the Bosgraafs.

### A. DOCKET NO. 320881[17]

### 1. THE FRANKLIN PROPERTY

The Bosgraafs first argue that, through the 2007 Agreement, Irwin Union agreed to discharge the 2005 Mortgage. We disagree.[18] When interpreting contracts, "this Court's

---

[13] *Id*.

[14] The Bosgraafs also argue that Huntington, not First Financial, held the senior interest in the ASU assets. As is discussed *infra*, the Bosgraafs lack standing to raise this claim.

[15] *Richards v Tibaldi*, 272 Mich App 522, 538; 726 NW2d 770 (2006). See also MCL 565.29.

[16] *Richards*, 272 Mich App at 539.

[17] We note that the Bosgraafs have made several notations to exhibits filed with their brief, some raising arguments not contained within their brief on appeal. We decline to consider these extraneous arguments. Pursuant to MCR 7.212(C)(7), an appellant's *brief* must contain his or her arguments. By placing these arguments within their exhibits, the Bosgraafs have circumvented MCR 7.212(B), which limits appellate briefs to 50 pages, absent this Court's leave to file a brief exceeding this page limitation. We refuse to condone such conduct.

[18] We do not find the Bosgraafs' position regarding the Franklin Property entirely clear. The Bosgraafs maintain that the 2005 Mortgage was extinguished by the 2007 Agreement. Yet they also assert that First Financial holds a second-position interest in the Franklin Property, as they believe the 2007 Agreement contemplates. Had the 2005 Mortgage been extinguished, First Financial would hold no interest at all in the Franklin Property because no enforceable mortgage would exist. Thus, we treat the Bosgraafs' position as being that the 2005 Mortgage was extinguished through an agreement with Irwin Union.

obligation is to determine the intent of the parties."[19]  "This Court must examine the language of the contract and accord the words their ordinary and plain meanings, if such meanings are apparent."[20]  Where a contract's language is unambiguous, we must "interpret and enforce the contract as written."[21]  Accordingly, an unambiguous contract reflects the parties' intent as a matter of law.[22]

The Bosgraafs rely on two clauses as demonstrating that the parties intended to extinguish the 2005 Mortgage.  The first reads as follows:

> B.  The original agreement between Bank and Borrowers was dated June 30, 2005, (the "Original Agreement") and has been subsequently amended.  The parties to the [2007] Agreement now desire to amend and restate the Original Agreement to incorporate all changes in prior amendments to the Original Agreement and to include additional changes to the Original Agreement.  This Agreement will incorporate all terms and conditions applicable to the Loans contemplated by the Original Agreement from and after the date of this Agreement.  Any reference to the Original Agreement will mean this Agreement, which is in substitution for and replaces in its entirety the Original Agreement.

The language of this paragraph is clear.  The parties intended to replace the 2005 Agreement, as amended, with the 2007 Agreement.  However, nothing in this paragraph demonstrates the intent to discharge the 2005 Mortgage, which is a separate contract between the parties.

The second clause relied on by the Bosgraafs states, in relevant part:

> 8.9.  <u>Integration and Severability</u>.  This Agreement embodies the entire agreement and understanding between the Borrowers and the Bank in connection with the Loans identified in this Agreement and supersedes all prior agreements and understandings, relating to the subject matter of this Agreement.  In the event of any inconsistency between any provision in this Agreement and any provision in another Loan Document, the provision in this Agreement will control.

This statement also lacks any agreement to discharge the 2005 Mortgage.  It is simply an integration clause, confirming that the 2007 Agreement represents the entire agreement reached by the parties in 2007.

The Bosgraafs contend that the 2005 Mortgage is part of the 2005 Agreement, and thus, by replacing the 2005 Agreement, the parties also intended to extinguish the 2005 Mortgage.

---

[19] *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007), citing *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003).

[20] *Id.*

[21] *Id.*

[22] *Id.*

While it was executed as part of the same overall transaction, the 2005 Mortgage is a separate agreement between the parties, one not mentioned in the clauses cited by the Bosgraafs. The mortgage itself contemplates that it would survive all future iterations of the debt it secured.[23] Further, reading the entire 2007 Agreement demonstrates that the parties intended that the 2005 Mortgage would continue. In the 2007 Agreement, the Bosgraafs warranted that they "had good and marketable fee simple title to the Site and Baker Units, *subject only to a first mortgage in favor of the Bank as mortgagee . . . .*" In the 2007 Agreement, the "Site" is defined as the Franklin Property, while the "Bank" is defined as Irwin Union. Thus, the agreement recognizes the existence of a first mortgage, held by Irwin Union, on the Franklin Property. Reading this warranty in conjunction with the use of the phrase "second mortgage lien" to describe the mortgage that was to be executed in 2007 makes it clear that this new mortgage, had it been executed, was intended to be second to the mortgage already held by Irwin Union.

The Bosgraafs next argue that the trial court erred by considering extrinsic evidence, specifically, prior conduct between the parties, to interpret the 2007 Agreement. The 2007 Agreement is a fully integrated contract, as is evidenced by its integration clause.[24] Accordingly, extrinsic evidence may not be admitted to vary the terms of the contract.[25] The trial court's opinion discussed this rule at great length, and a fair reading of the opinion demonstrates that the trial court did not rely on past conduct by the parties to interpret the 2007 Agreement. While it mentioned prior conduct in passing, the trial court relied only on the language of the agreement to find that the 2005 Mortgage was not extinguished by that agreement.[26]

The Bosgraafs next argue that a question of fact regarding the proper interpretation of the 2007 Agreement exists because the trial court interpreted the contract in two conflicting ways. This argument ignores the very purpose of allowing trial courts to reconsider earlier opinions, which is to allow the trial court the opportunity to correct its errors without forcing the parties to expend the additional time and expense of pursuing an appeal.[27] The trial court erred when it found that the 2007 Agreement extinguished not only the 2005 Agreement, but also the 2005 Mortgage. The trial court corrected this error on reconsideration. That the trial court discovered its error and corrected it does not demonstrate the existence of a question of fact.

---

[23] The 2005 Mortgage states that it secures the promissory note and SLC created in 2005 "as amended, renewed, extended and replaced from time to time . . . ."

[24] See *Hamade v Sunoco Inc*, 271 Mich App 145, 168-169; 721 NW2d 233 (2006) (the existence of an integration or merger clause is conclusive evidence that the contract is fully integrated).

[25] *Id*. at 167-168. While there are certain exceptions to this rule, none are present here.

[26] In the alternative, the Bosgraafs argue that if the trial court was to consider some extrinsic evidence, it should have considered additional extrinsic evidence. Because the 2007 Agreement was fully integrated, the contract must be interpreted by looking only within the four corners of the document. *Id*.

[27] *Bers v Bers*, 161 Mich App 457, 462-463; 411 NW2d 732 (1987).

The Bosgraafs also argue that the trial court erred by finding that the *D'Oench, Duhme* doctrine[28] and its statutory counterpart, 12 USC § 1823(e), would bar enforcing the 2007 Agreement against First Financial. The Bosgraafs misconstrue the trial court's ruling. The trial court did not hold that the doctrine and statute barred enforcement of the 2007 Agreement. Rather, the trial court held that the doctrine and statute barred enforcing any alleged oral agreements to discharge the 2005 Mortgage. The Bosgraafs' argument lacks merit.

## 2. ASU ASSETS

The Bosgraafs argue that a question of fact exists regarding whether Huntington or First Financial holds the senior priority interest with regard to the ASU Assets. We conclude that the Bosgraafs lack standing to raise this claim. Whether a party has standing is a question of law reviewed de novo.[29] "[T]he objective of the standing requirement is to ensure that only those who have a substantial interest will be allowed to come in to court to complain."[30] The appropriate inquiry is whether the Bosgraafs are "proper part[ies] to request adjudication of the issue, not whether the issue is justiciable."[31] Our Supreme Court has described Michigan's standing doctrine as follows:

> We hold that Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's long-standing historical approach to standing. Under this approach, a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant.[32]

Certainly, creditors who hold liens against the same asset have standing to dispute which creditor holds the higher priority interest in that asset.[33] However, we are aware of no authority, and the Bosgraafs cite none, holding that a debtor has a cause of action against creditors solely to

---

[28] *D'Oench, Duhme & Co v FDIC*, 315 US 447; 62 S Ct 676; 86 L Ed 956 (1942).

[29] *Trademark Props of Mich, LLC v Fed Nat'l Mortgage Ass'n*, 308 Mich App 132, 136; 863 NW2d 344 (2014).

[30] *Id*. (quotation marks and citation omitted).

[31] *Id*.

[32] *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

[33] See, e.g., *System Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642; 837 NW2d 449 (2013).

dispute which creditor has the higher priority claim to a particular asset.[34] Nor do the Bosgraafs have an interest that will be detrimentally affected by the priority decision. Whether First Financial or a different creditor is entitled to the ASU assets does not affect what might remain for the Bosgraafs after their debts to all of these creditors are paid.[35] The Bosgraafs do not have standing to raise the issue.[36]

## 3. THE BOSGRAAFS' CROSS-CLAIMS

The Bosgraafs also challenge the trial court's decision to grant summary disposition in First Financial's favor with regard to three of their cross-claims against First Financial.[37] The Bosgraafs first argue that the trial court erred by granting summary disposition with regard to their breach of contract claims. These claims allege that Irwin Union breached the Third Amendment and 2007 Agreement by failing to discharge the 2005 Mortgage and 2005 Security Agreement.

The evidence does not support the Bosgraafs' breach of contract claims. The Third Amendment contains two sections, a "Statement of Facts" and a second section entitled "Agreement." The language relied upon by the Bosgraafs is contained in the Statement of Facts section. However, it is the Agreement section that details the specific changes to be made to certain sections of the 2005 Agreement. Nothing in the Agreement section makes any alterations, or even discusses, the collateral that secured the SLC. Accordingly, Irwin Union did

---

[34] The limited authority on the topic supports a conclusion that debtors do not have standing to dispute the priority of creditors. See *In re Riccitelli*, 14 Fed App'x 57, 58-59 (CA 2, 2001) (debtor lacked standing to seek equitable subordination of secured claims against bankruptcy estate); *In re Orange Co*, 219 BR 543, 556-557 (Bankr CD CA 1997) (Chapter 9 bankruptcy debtor lacked standing to raise a claim of equitable subordination; the issue to be resolved in an equitable subordination claim is "the order of payment of the debt."); *In re 26 Trumbell Street, Inc*, 96 BR 419, 421-422 (Bankr D Conn, 1989) (debtor lacked standing to seek an order directing how bankruptcy estate assets would be applied; the debtor "ha[d] no personal stake" in the matter).

[35] Indeed, First Financial and Huntington have settled their dispute over the ASU assets, and it appears that neither creditor was made whole as a result.

[36] To the extent the Bosgraafs can be understood as arguing that First Financial holds only a second-priority interest in the Franklin Property, we reach the same conclusion. Once it is established that First Financial holds an interest in the Franklin Property, the issue of priority is one between creditors, not between debtor and creditor.

[37] In its brief on appeal, First Financial dedicates several pages of discussion to explaining why the trial court correctly granted summary disposition in its favor with regard to several additional cross-claims raised by the Bosgraafs in the trial court, but not contested on appeal. As the Bosgraafs have not questioned the trial court's dismissal of these claims, we decline to address them.

not breach the Third Amendment by failing to release the 2005 Mortgage or 2005 Security Agreement.

As was discussed, nothing in the 2007 Agreement required Irwin Union to discharge the 2005 Mortgage. Regarding the ASU assets, the 2007 Agreement states that Irwin Union would hold a "first position and fully perfected security interest" on the ASU assets. It indicates that this interest would be represented by a security agreement dated the same date as the 2007 Agreement, November 15, 2007. Of course, the Bosgraafs could not provide a first-position security interest to First Financial on November 15, 2007, because they had granted a security interest in the ASU assets to Huntington in 2006.[38] Regardless, nothing in this statement required Irwin Union to release the 2005 Security Agreement. As the trial court noted, had the parties intended to release either the 2005 Mortgage or the 2005 Security Agreement, they could have simply stated as much. The parties did not, and we will not rewrite the agreements to create such a requirement.[39]

The Bosgraafs also argue that the trial court incorrectly granted summary disposition in favor of First Financial with regard to their cross-claim for conversion. Conversion is an intentional tort that exists when one wrongfully exerts dominion or control over property belonging to another.[40] The Bosgraafs argue that First Financial wrongfully asserted a right to receive rents from tenants of the Franklin Property. The 2005 Mortgage, which was never discharged, provided First Financial with the right to receive rents from tenants of the Franklin Property on the Bosgraafs' default. The Bosgraafs defaulted on debt secured by the mortgage, and thus, First Financial was entitled to receive rents from tenants of the Franklin Property. First Financial's actions were not wrongful, and accordingly, it was entitled to summary disposition on the Bosgraafs' claim of conversion.

---

[38] The Bosgraafs argue that because they did so, the 2007 Agreement is ambiguous regarding whether Irwin Union would hold a first- or second-priority interest in the ASU assets. The language of the agreement is quite clear: Irwin Union would receive a first-priority interest, represented by a security agreement dated November 15, 2007. That the Bosgraafs could not live up to their promise does not create an ambiguity; it creates a breach of contract.

[39] See *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130-131; 743 NW2d 585 (2007), quoting *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991) ("Plain and unambiguous contract language cannot be rewritten by the Court 'under the guise of interpretation,' as the parties must live by the words of their agreement.").

[40] *Trail Clinic, PC v Bloch*, 114 Mich App 700, 705; 319 NW2d 638 (1982).

Relying on provisions contained within the Third Amendment and the 2007 Agreement, Citizens argues that the trial court erred when it concluded that First Financial, Irwin Union's successor in interest, was entitled to priority with respect to the Franklin Property. We disagree.

Unlike the Bosgraafs, Citizens does not argue that the 2005 Mortgage was actually discharged. Rather, the position taken by Citizens is that the Bosgraafs and Irwin Union agreed in both the Third Amendment and the 2007 Agreement that Irwin Union's interest in the Franklin Property would be second to that held by Citizens. Citizens explains that it is irrelevant whether the parties did so by discharging the 2005 Mortgage and creating a second mortgage, one which would have been recorded after the Republic Mortgage was recorded, or by subordinating the 2005 Mortgage to the Republic Mortgage. As Citizens states in its brief, "the issue is the enforcement of the parties' contract."

The error in Citizens's argument is that it is based on its ability to enforce contracts to which it is not a party. The contracts Citizens seeks to enforce were between Irwin Union and the Bosgraafs only, leaving Citizens as a third party to these contracts. As this Court has explained:

> Only intended, rather than incidental, third-party beneficiaries may sue when a contractual promise in their favor has been breached. MCL 600.1405; *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 427; 670 NW2d 651 (2003). More specifically, an incidental beneficiary has no rights under a contract. *Kammer Asphalt Paving Co, Inc v East China Twp Schools*, 443 Mich 176, 190; 504 NW2d 635 (1993), citing *Greenlees v Owen Ames Kimball Co*, 340 Mich 670, 676; 66 NW2d 227 (1954). A third person cannot maintain an action on a simple contract merely because he or she would receive a benefit from its performance or would be injured by its breach. *Id*. "Third-party beneficiary status requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract." *Dynamic Constr Co v Barton Malow Co*, 214 Mich App 425, 428; 543 NW2d 31 (1995). Further, a determination that a contract establishes an intended third-party beneficiary through a direct promise to the third party must be based on an objective review of the form and meaning of the contract itself. *Schmalfeldt*, [469 Mich] at 428.[41]

Our Legislature has further defined under what circumstances a third party to a contract may seek to enforce that contract. "Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee."[42] "A promise shall be

---

[41] *Kisiel v Holz*, 272 Mich App 168, 170-171; 725 NW2d 67 (2006).

[42] MCL 600.1405.

construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person."[43] As our Supreme Court has explained:

> In describing the conditions under which a contractual promise is to be construed as for the benefit of a third party to the contract in § 1405, the Legislature utilized the modifier "directly." Simply stated, section 1405 does not empower just any person who benefits from a contract to enforce it. Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation "directly" to or for the person. This language indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract.[44]

After objectively reviewing the form and meaning of the contracts at issue,[45] we conclude that Citizens was, at best, an incidental beneficiary of these agreements. The most obvious indication of this fact is that Citizens's predecessor, Republic, is never once mentioned in either agreement, nor is its mortgage on the Franklin Property. It is difficult to imagine how the contracts could contain an obligation directly to or for Citizens when Citizens was easily identifiable, yet never mentioned.[46] Nowhere in either agreement does Irwin Union explicitly agree to subordinate the 2005 Mortgage to the Republic Mortgage.[47] Thus, there is no direct, express promise by Irwin Union to act for the benefit of Republic or its successors. As such, Citizens has no rights under the contracts between Irwin Union and the Bosgraafs, and cannot enforce any obligation allegedly created by those agreements.[48]

Citizens also argues that equity mandates finding that the Republic Mortgage is senior to the 2005 Mortgage. However, the first argument put forth by Citizens is not that it *is* entitled to

---

[43] MCL 600.1405(1).

[44] *Koenig v South Haven*, 460 Mich 667, 676-677; 597 NW2d 99 (1999).

[45] *Kisiel*, 272 Mich App at 171.

[46] See *Koening*, 460 Mich at 676-679. See also MCL 600.1405(2) (recognizing that a promise may be undertaken for the benefit of a third party who is not ascertainable at the time the promise is made; the third party's rights vest when that party becomes ascertainable).

[47] Citizens's argument relies on the use of the phrase "second mortgage" to describe Irwin Union's interest in the Franklin Property. Citizens simply assumes that this phrase demonstrates the intent to place the Republic Mortgage as first in priority. However, there is no language in either contract even acknowledging the existence of the Republic Mortgage.

[48] *Kisiel*, 272 Mich App at 170-171. Citizens also argues that the *D'Oench, Duhme* doctrine and its statutory counterpart do not bar it from relying on these contracts. We need not decide the issue because Citizens cannot enforce these contracts in the first instance.

equitable relief, but that First Financial is *not* entitled to equitable relief because it lacks clean hands. Simply put, First Financial does not seek equitable relief. Rather, First Financial seeks legal relief, in the form of enforcement of a note and a duly recorded mortgage.

Citizens also argues that it is entitled to equitable subrogation of the 2005 Mortgage. As our Supreme Court has explained:

> The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as "legal subrogation," and has long been applied by courts of equity. *Stroh v O'Hearn*, 176 Mich 164, 177[; 142 NW 865 (1913)]. There is also what is known as "conventional subrogation." It arises from an agreement between the debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof. It is wholly independent of any interest in the property which the lender may have to protect. It does not, however, inure to a mere volunteer who has no equities which appeal to the conscience of the court.[49]

Neither form applies in this matter. When it loaned money to the Bosgraafs, Republic was not compelled to pay the Bosgraafs' debt in order to protect an existing security. Nor did Republic agree to pay the debt "in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof."[50] Rather, Republic was a mere volunteer, one who voluntarily paid indebtedness secured by the 2005 Mortgage. As this Court has stated:

> [T]he doctrine of equitable subrogation does not allow a new mortgagee to take the priority of the older mortgagee merely because the proceeds of the new mortgage were used to pay off the indebtedness secured by the old mortgage. It is clear to us that . . . [Republic, now Citizens] is a mere volunteer and, therefore, is not entitled to equitable subrogation.[51]

---

[49] *French v Grand Beach Co*, 239 Mich 575, 580-581; 215 NW 13 (1927).

[50] *Id*. at 580.

[51] *Washington Mut Bank, FA v ShoreBank Corp*, 267 Mich App 111, 119-120; 703 NW2d 486 (2005). Nor do the equities of this matter appeal to this Court's conscience. *French*, 239 Mich at 581. Before it loaned $8.5M to the Bosgraafs, Republic certainly could have sought a subordination agreement from Irwin Union. It could also have obtained a payoff statement from Irwin Union and paid Irwin Union directly to ensure that all of the debt securing the 2005 Mortgage was paid. It appears that rather than deal directly with Irwin Union, Republic relied on

-14-

Affirmed.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

the Bosgraafs to pay the entire debt. The Bosgraafs, of course, did not do so, leaving Citizens in the unenviable position it sits in today.